**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

BRIDGET NICOLE REVILLA, et al.,          )
                                                               )
                     Plaintiffs,                        )
                                                               )
v.                                                            )          Case No. 13-CV-315-JED-TLW
                                                               )
STANLEY GLANZ, SHERIFF OF TULSA     )
COUNTY, et al.                                       )
                                                               )
                     Defendants.                     )

**OPINION AND ORDER**

Before the Court is defendant Stanley Glanz's Motion to Dismiss (Doc. 32), to which

plaintiffs have responded (Doc. 36), and Sheriff Glanz has replied (Doc. 39).

**I.      Background**

This action was commenced by one plaintiff, Bridget Nicole Revilla, regarding injuries

she allegedly suffered as a result of the "Tulsa County Jail's unconstitutional medical care

policies and customs." (Complaint, Doc. 2). The same day that Ms. Revilla filed the initial

Complaint, an Amended Complaint, adding three additional plaintiffs, was filed. (Doc. 4). The

additional plaintiffs are: (1) Alma McCaffrey, as the Personal Representative of the Estate of

Gregory Brown; (2) Christine Wright, as Special Administrator of the Estate of Lisa Salgado;

and (3) Deborah Young, as Special Administrator of the Estate of Gwendolyn Young. All four

plaintiffs allege that Sheriff Glanz is liable, in his official and individual capacities, under 42

U.S.C. § 1983 and the Oklahoma Constitution, art. 2, §§ 7 and 9. They allege that he maintained

and was responsible for a policy, custom, or practice of constitutionally deficient medical care at

the Tulsa County Jail, that he was deliberately indifferent to serious risks to inmate health and

safety, and that the alleged deliberately indifferent failure to provide medical care resulted in injuries to or the deaths of plaintiffs or their decedents who were incarcerated at the Jail.

Sheriff Glanz seeks dismissal on several grounds, including improper joinder of the three additional plaintiffs in the Amended Complaint, and dismissal of plaintiffs' individual and official capacity claims against Glanz under 42 U.S.C. § 1983 and the Oklahoma Constitution, for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Sheriff Glanz also requests that the Court dismiss plaintiffs' requests for punitive damages against him in his official capacity.

## II. Dismissal Standards

In considering a Rule 12(b)(6) dismissal motion, a court must determine whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require "a short and plain statement of the claim to show that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The standard does "not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555-56, 570 (citations omitted). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id*. at 556. "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 562.

*Twombly* articulated the pleading standard for all civil actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to the claimant. *See Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

## III. Discussion

### A. *Joinder of Plaintiffs*

Sheriff Glanz seeks dismissal of plaintiffs McCaffrey, Wright, and Young on misjoinder grounds. He asserts that "each plaintiff's claims arise from separate occurrences at different times," and that joinder of their claims is thus improper under Fed. R. Civ. P. 20, such that dismissal is appropriate under Fed. R. Civ. P. 21. (Doc. 32 at 4). In the alternative, Glanz requests severance of each of the plaintiffs. Rule 20(a)(1) of the Federal Rules of Civil Procedure governs permissive joinder of plaintiffs. The rule provides:

> Persons may join in one action as plaintiffs if:
>
> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1). "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21.

Sheriff Glanz does not argue that there is no "question of law or fact common to all plaintiffs." *See* Fed. R. Civ. P. 20(a)(1)(B). However, the parties dispute whether these plaintiffs seek relief arising out of the same transaction, occurrence, or series of transactions or

occurrences.  *See* Fed. R. Civ. P. 20(a)(1)(A).  The courts have adopted a case-by-case approach as to whether a particular factual situation constitutes a transaction or occurrence for purposes of Rule 20.  *Jacobs v. Watson Pharm., Inc.*, 10-CV-120-TCK, 2011 WL 2216257, *2 (June 7, 2011) (citations omitted).  Borrowing from the judicial construction of "transaction or occurrence" used in Fed. R. Civ. P. 13(a), courts construing the meaning of transaction and occurrence in Rule 20 have generally applied the "logical relationship" test.  *Id.*  That is, in determining whether claims arise out of the same series of transactions or occurrences, "all logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence."  *Id.* (quoting 7 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, Federal Practice & Procedure, § 1653 (3d ed. 2010)).

Plaintiffs argue that permissive joinder is appropriate under Rule 20(a) because all of the plaintiffs  challenge the "same systemic deficiencies with the Tulsa County Jail's health services program and all allege that there is an affirmative causal nexus between common health policies, practices and/or customs and the underlying constitutional violations and injuries."  (Doc. 36 at 5-6).  The Court recognizes that there are differences in the specific dates of incarceration with respect to each plaintiff's claim and the specific ailments which they assert were improperly treated or not treated at all.  Also, the particular medical staff involved in each incident are not identical.  However, the injuries / deaths alleged to have resulted from systemic deficiencies in medical care at the Jail were within a time frame of approximately 18 months, between June 2011 and February 2013.  There is also overlap between the specific medical staff who are alleged to have provided dangerously negligent care to different plaintiffs pursuant to a Jail policy, custom, or practice of providing constitutionally deficient medical care during that time

4

frame.  These allegations present a logical relationship between the circumstances underlying the claims such that the Court does not find joinder of the plaintiffs to be improper.  *See, e.g., Jacobs*, 2011 WL 2216257 (finding joinder of plaintiffs proper where the same type of fentanyl patches were alleged to have been prescribed by different doctors at different times and caused deaths by overdose nearly a year apart); *Laureano v. Goord*, 06-Civ-7845(SHS)(RLE), 2007 WL 2826649 (S.D.N.Y. Aug. 31, 2007), *report and recommendation adopted*, 2007 WL 2852770 (S.D.N.Y. Sept. 28, 2007) (finding joinder of two plaintiffs who asserted claims based upon the deaths of two prison inmates in the same prison system: "Plaintiffs claim that DOCS [Department of Correctional Services] and the OMH [Office of Mental Health] policy makers knowingly disregarded serious risks to the safety of seriously mentally ill inmates through understaffing and other systemic deficiencies. . . . [T]hese claims are logically related in that they are challenges to the DOCS and OMH mental health practices and policies [the inmates] were subjected to by virtue of being in DOCS custody.  Therefore, they arise out of the same transaction or occurrence such that joinder is appropriate.").

Even properly joined claims may be severed under Fed. R. Civ. P. 21, or the Court may order separate trials of any claims under Fed. R. Civ. P. 42(b).  The Court finds that judicial economy would be served by denying severance at this time, as the common issues of law and fact and logical relationship between the claims would likely result in duplicative discovery and dispositive motions covering common issues of law and fact.  There is a substantial overlap of witnesses, although as noted they are not identical as between each plaintiff's claims.

For the foregoing reasons, the request to dismiss the three plaintiffs is denied.  The denial of Sheriff Glanz's alternate request for severance of plaintiffs' claims at this time is without prejudice to any of the parties reasserting a request for severance prior to trial.

### B.      Failure to State a Claim

#### 1.      Individual Capacity

As to his individual capacity, Glanz argues that the Amended Complaint does not allege his personal role in depriving the plaintiffs (or their decedents) of their constitutional rights and does not allege that the Sheriff "was privy to any information that would allow a reasonable finder of fact to conclude that he ignored an excessive risk of harm to these Plaintiffs, or people like plaintiff," and therefore the Amended Complaint does not state a claim for supervisory liability under § 1983. (Doc. 32 at 10, 14).

Plaintiff's claims of individual liability are premised upon a theory of supervisory liability under § 1983.  Section 1983 "allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which 'subjects, or causes to be subjected' that plaintiff 'to the deprivation of any rights . . . secured by the Constitution. . . .'" *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (quoting 42 U.S.C. § 1983).  A plaintiff may therefore establish § 1983 liability of a defendant-supervisor by demonstrating that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.*

The Eighth Amendment "imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).  "Under the Fourteenth Amendment due process clause, 'pretrial detainees are . . .

6

entitled to the degree of protection against denial of medical attention which applies to convicted

inmates under the Eighth Amendment." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir.

2009) (quoting *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985)).  A violation of

such rights under the Eighth Amendment gives rise to a civil rights claim under 42 U.S.C. §

1983. *See Tafoya*, 516 F.3d at 916.

Claims based upon deliberate indifference to serious medical needs of inmates are judged

under the "deliberate indifference to serious medical needs" test of *Estelle v. Gamble*, 429 U.S.

97 (1976).  As explained by the Supreme Court in *Estelle*:

> The [Eighth] Amendment embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency. . . against which we must evaluate penal measures.  Thus, we have held repugnant to the Eighth Amendment punishments which are incompatible with the "evolving standards of decency that mark the progress of a maturing society" . . . or which "involve the unnecessary and wanton infliction of paint. . . .
>
> These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical "torture or a lingering death," the evils of most immediate concern to the drafters of the Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common-law view that "(i)t is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself."
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

> This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain.

*Estelle*, 429 U.S. at 103-05 (internal citations and footnotes omitted).

In accordance with the principles set forth in *Estelle*, "deliberate indifference" is defined as something more than negligence; it requires knowing and disregarding an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified that deliberate indifference has both objective and subjective components. *Wilson*, 501 U.S. at 298-99. The objective component is met if the harm suffered is sufficiently serious. *Id.* The subjective component of the deliberate indifference test is met if a prison official knows of and disregards an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837; *Estelle*, 429 U.S. at 104-05.

"To prevail on the subjective component, the prisoner must show that the defendant[] knew [he] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Martinez*, 563 F.3d at 1089; *see also Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) ("The subjective component is satisfied 'if an officer knows of and disregards an excessive risk to [an inmate's] health or safety.'"). "The official's knowledge of the risk need not be knowledge of a substantial risk to a *particular* inmate, or knowledge of the particular manner in which injury might occur." *Tafoya*, 516 F.3d at 916 (10th Cir. 2008) (emphasis in original); *see Farmer*, 511 U.S. at 843; *Layton v. Board of County Comm'rs of Okla. County*, 512 Fed. App'x 861 (10th Cir. Mar. 12, 2013) (quoting *Tafoya*). "It does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk . . . for reasons personal to him or because all prisoners in his situation face such a risk." *Tafoya*, 516 F.3d at 916 (quoting *Farmer*, 511 U.S. at

843).   "[A] jury is permitted to infer that a prison official had actual knowledge of the

constitutionally infirm condition based solely on circumstantial evidence, such as the

obviousness of the condition."  *Tafoya*, 516 F.3d at 916.

Plaintiffs have adequately alleged facts which state a plausible claim against Sheriff

Glanz in his individual capacity.   The allegations in the Amended Complaint include the

following:

> Defendant Glanz, as Sheriff and the head of the Tulsa County Sheriff's Office
> ("TCSO"), was, at all times relevant hereto, responsible for ensuring the safety
> and well-being of inmates detained and housed at the Tulsa County Jail, including
> the provision of appropriate medical and mental health care and treatment to
> inmates in need of such care. . . . [He is] responsible for creating, adopting,
> approving, ratifying, and enforcing the rules, regulations, policies, practices,
> procedures, and/or customs of TSCO and Tulsa County Jail, including the
> policies, procedures, and/or customs that violated Ms. Revilla, Mr. Brown, Ms.
> Salgado and Ms. Young's rights. . . .  (Doc. 4, ¶ 10).

> Sheriff Glanz . . . [failed] to provide prompt and adequate care in the face of
> known and substantial risks to [each inmate's] health and well being (¶¶ 38-39
> [Mr. Brown], ¶ 51 [Ms. Salgado], ¶¶ 62-63 [Ms. Young], ¶¶ 74-75 [Ms. Revilla]).

> The deliberate indifference [to each inmate's] serious medical needs . . . was in
> furtherance of and consistent with policies, customs and/or practices that Sheriff
> Glanz promulgated, created, implemented or possessed responsibility for the
> continued operation of. . . . (*Id.* at ¶ 77).

> There are longstanding, systemic deficiencies in the medical and mental health
> care provided to inmates at the Tulsa County Jail.  Sheriff Glanz [has] long
> known of these systemic deficiencies and the substantial risks to inmates like
> Plaintiffs, but [has] failed to take reasonable steps to alleviate those deficiencies
> and risks.  (*Id.* at ¶ 78)

Plaintiffs also recite numerous other incidents and reports, as well as inmate deaths,

which they allege provided clear notice to Sheriff Glanz of a seriously deficient medical and

mental health care which placed inmates at serious risk of injury or death.  Such notice included

a report by the United States Department of Homeland Security's Office of Civil Rights and

Civil Liberties in 2011, which "found a prevailing attitude among clinic staff [at the Jail] of

indifference."   Plaintiff alleges that Sheriff Glanz did not implement any meaningful changes in

medical care at the Jail after having such notice of extensive and dangerous deficiencies.   They

further allege that, less than 30 days after that 2011 report was issued, another inmate "died as a

result of truly inhumane and reckless medical neglect which defies any standard of human

decency," and that, even after that Jail death, Sheriff Glanz did not make any meaningful

improvements to the medical system.   (*Id.* at ¶¶ 78-96).   Plaintiffs also assert that "[t]here is a

longstanding policy, practice or custom at the Jail of . . . refusing to send inmates with emergent

needs to the hospital for purely financial reasons," that "[t]here is a well-established policy,

practice and/or custom of understaffing the Jail's medical unit," and that Sheriff Glanz has

continued to retain Correctional Healthcare as the Jail's medical provider notwithstanding the

serious deficiencies of which he was notified prior to the deaths or injuries of each of the

plaintiffs.   (*Id.* at ¶¶ 97-99).

Summarizing their allegations, plaintiffs allege that the foregoing facts establish that

"there are deep-seated and well-known policies, practices and/or customs of systemic, dangerous

and unconstitutional failures to provide adequate medical and mental health care to inmates at

the Tulsa County Jail . . . which evinces fundamental failures to train and supervise medical and

detention personnel [and] created substantial, known and obvious risks to the health and safety of

inmates like Plaintiffs."   (*Id.* at ¶ 100).   Yet, according to the Amended Complaint, Sheriff Glanz

"failed to take reasonable steps to alleviate the substantial risks to inmate health and safety, in

deliberate indifference to Plaintiffs' serious medical needs."   (*Id.*).

These allegations sufficiently allege facts stating plausible claims by each plaintiff

against Sheriff Glanz in his individual capacity for supervisory liability under *Dodds* and *Estelle*.

2.      *Official Capacity*

The same allegations of the Amended Complaint (noted above) state claims against Sheriff Glanz in his official capacity.  A claim against a government actor in his official capacity "is essentially another way of pleading an action against the county or municipality" he represents, and is considered under the standards applicable to 42 U.S.C. § 1983 claims against municipalities or counties. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010).  To hold a county / municipality liable under § 1983, a plaintiff must demonstrate (1) the existence of a municipal policy or custom by which the plaintiff was denied a constitutional right and (2) that the policy or custom was the moving force behind the constitutional deprivation (i.e. "that there is a direct causal link between the policy or custom and the injury alleged").  *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (citations omitted).

"When an officer deprives a citizen of a constitutional right, municipal governments may incur liability under § 1983 when 'the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." *Olsen*, 312 F.3d at 1317-18 (quoting *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 690 (1978)).  A municipal entity may be held liable for an act it has officially sanctioned, or for the actions of an official with final policymaking authority. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 482-83 (1986); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127-28 (1988).  "The failure to remedy ongoing constitutional violations may be evidence of deliberate indifference on the part of a municipality." *Layton*, 512 Fed. App'x at 871.  In addition, "continued adherence to an approach that [municipal decision

11

makers] know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the 'deliberate indifference' – necessary to trigger municipal liability.'"  *Board of County Comm'rs v. Brown*, 520 U.S. 397, 407 (1997) (citations omitted).

The Tenth Circuit has described several types of actions which may constitute a municipal policy or custom:

> A municipal policy or custom may take the form of (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."

*Bryson*, 627 F.3d at 788 (citations omitted).

Here, plaintiffs have alleged that the inmates' constitutional rights were violated by policies, procedures, or customs of "systemic, dangerous and unconstitutional failures to provide adequate medical and mental health care to inmates at the Tulsa County Jail" and that the deaths of Mr. Brown, Ms. Salgado and Ms. Young, and the alleged injuries of Ms. Revilla, were, in fact, caused by such dangerous conditions.  Specifically, as to each of the plaintiffs or their decedents, the Amended Complaint contains detailed allegations of a dangerous lack of medical care even in the face of obvious and serious risks to the well-being of those Jail inmates.  They further claim that there was a system-wide failure to provide adequate medical care to inmates with emergent health care needs, which the Sheriff knowingly permitted to continue despite advance notice that such failures were likely to lead to serious injury or death.  Plaintiffs assert that the plaintiffs' or their decedents' deaths were caused by those policies, customs, or practices.  (*See*

Doc. 4 at ¶¶ 18-76).  These allegations state plausible claims against Sheriff Glanz in his official capacity.

> 3.       *Claims for Punitive Damages Against Glanz in His Official Capacity*

Sheriff Glanz requests that the Court dismiss the plaintiffs' requests for punitive damages against Glanz in his official capacity, as such recovery is not permitted against a municipality.  It is indeed well settled that a plaintiff may not recover punitive damages against a municipality under § 1983.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270–71 (1981); *Youren v. Tintic School Dist.*, 343 F.3d 1296, 1307 (10th Cir. 2003).   However, in *Youren*, the Tenth Circuit stated that "[t]he fact that municipalities are immune from punitive damages does not, however, mean that individual officials sued in their official capacity are likewise immune." *Id.* at 1296.  This statement by the court has repeatedly been called into question.  *See, e.g., Kerns v. Indep. Sch. Dist. No. 31 of Ottawa Cnty.*, 13-CV-290-TCK-PJC, 2013 WL 5903632 (N.D. Okla. Oct. 31, 2013) (collecting cases which have declined to follow *Youren* on this point).  Recently, in *Cross Continent Dev., LLC v. Town of Akron, Colo.*, No. 12-1391, 2013 WL 6334840 (10th Cir. Dec. 6, 2013), the Tenth Circuit discussed this issue:

> [W]e must adhere to prior rulings of our court in the absence of our court's issuance of an en banc decision overruling the prior panel decision. *In re Smith*, 10 F.3d 723, 724 (10th Cir.1993). We feel compelled, however, to note our agreement with McGuire's characterization of *Youren* as an anomalous outlier. After all, if "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("It is *not* a suit against the official personally, for the real party in interest is the entity." (emphasis in original)), and "a municipality is immune from punitive damages under 42 U.S.C. § 1983," *City of Newport v. Fact Concerts*, *Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), then individuals sued in their official capacity should be immune from punitive damages as well.  The conclusion seems inescapable. Indeed, the force of this reasoning has led courts within our own circuit to ignore *Youren* when dismissing punitive damage claims in official-capacity § 1983 suits. *See, e.g., Fernandez v. Taos Mun. Sch. Bd. of Educ.*, 403 F.Supp.2d 1040, 1043 (D.N.M.2005) (Kelly, J., sitting by designation).

This Court agrees with the analysis of *Cross Continent* that *Youren* is anomalous and somewhat inconsistent with Supreme Court precedent.  However, at this point, because *Youren* remains precedent within this Circuit and the Court need not determine the punitive damages issue at this stage, Sheriff Glanz's request that the Court dismiss the plaintiffs' punitive damages allegations against him in his official capacity is denied, without prejudice.

### 4.      *Claims Under the Oklahoma Constitution*

Plaintiffs assert claims under Article 2, §§ 7 and 9 of the Oklahoma Constitution. Specifically, they allege that, under the Oklahoma Due Process Clause (§ 7), "the right to be free from cruel and unusual punishment extends to pre-trial detainees who have yet to be convicted of a crime" just as the Fourteenth Amendment's Due Process Clause extends the protections of the Eighth Amendment's prohibition of cruel and unusual punishment to pre-trial detainees under the United States Constitution.  (Doc. 36 at 21).  Sheriff Glanz argues that the Oklahoma Constitution's prohibition of cruel and unusual punishment applies only to those convicted of a crime and that it is not extended to pretrial detainees.  In the cases cited by the Sheriff (*see* Doc. 32 at 17-18), courts determined that federal and state prohibitions on cruel and unusual punishment apply only to those convicted of a crime.  As plaintiff points out in response, those holdings are in direct conflict with published Tenth Circuit authorities, at least with respect to the federal Constitution.  "Under the Fourteenth Amendment due process clause, 'pretrial detainees are . . . entitled to the degree of protection against denial of medical attention which applies to convicted inmates' under the Eighth Amendment."  *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985)).

Article 2, § 9 of the Oklahoma Constitution is virtually identical to the Eighth Amendment to the United States Constitution; § 9 prohibits "cruel or unusual punishments,"

14

while the Eighth Amendment prohibits "cruel and unusual punishments."  Likewise, both the state and federal Due Process Clauses prohibit a state from depriving any person of "life, liberty, or property, without due process of law."  U.S. Const. amend. XIV; Okla. Const. art. 2, § 7. "*Oklahoma's Due Process Clause, Okla. Const. Art. 2, § 7, has a definitional sweep that is coextensive with its federal counterpart*, although there may be situations in which the Oklahoma provision affords greater due process protections than its federal counterpart."  *State ex rel. Oklahoma Bar Ass'n v. Mothershed*, 264 P.3d 1197, 1218 n.65 (Okla. 2011) (emphasis added). In other words, the state Due Process Clause may afford greater, but not lesser, protections than the Due Process Clause of the United States Constitution.  *See id.*  Thus, the Court sees no reason to find that the Oklahoma Due Process Clause does not extend to pretrial detainees "the degree of protection against denial of medical attention which applies to convicted inmates under" the state's equivalent (Okla. Const. art. 2, § 9) of the Eighth Amendment prohibition against cruel or unusual punishment.  *See Martinez*, 563 F.3d at 1088. The motion to dismiss the state constitutional claim is accordingly denied at this time.[1]

IT IS THEREFORE ORDERED that defendant Stanley Glanz's Motion to Dismiss (Doc. 32) is **denied** at this time.

SO ORDERED this 17th day of March, 2014.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

---

[1]    Plaintiffs' Amended Complaint alleges that Ms. Young was convicted prior to her death at the Jail.  (Doc. 4 at ¶ 53).  Thus, her state constitutional claim would be analyzed under the state's prohibition of "cruel or unusual punishments" (art. 2, § 9), while the other plaintiffs who were pretrial detainees would have their state constitutional claims analyzed under the state's Due Process Clause (art. 2, § 7).