IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRIDGET NICOLE REVILLA, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No.: 13-CV-315-JED-TLW |
| ) | |
| STANLEY GLANZ, et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' BRIEF REGARDING RELEVANCE,
FOR DISCOVERY PURPOSES, OF DEPOSITION EXHIBIT**

**COME NOW**, Plaintiffs, Bridget Nicole Revilla ("Ms. Revilla"), Alma McCaffrey, as Personal Representative of the Estate of Gregory Brown ("Mr. Brown"), deceased, Christine Wright, as Special Administrator of the Estate of Lisa Salgado ("Ms. Salgado"), deceased, Deborah Young, as Special Administrator of the Estate of Gwendolyn Young ("Ms. Young"), deceased, (hereinafter, collectively referred to as "Plaintiffs"), and, pursuant to the Court's directive (*see* Dkt. #126), respectfully submit their Brief Regarding the Relevance, for Discovery Purposes, of Deposition Exhibit, as follows:

1. Counsel for Plaintiff recently obtained a two-page document, entitled "The Reasons For the Sheriff to Resist a Grand Jury is to Understand Who and What's Behind It" (hereinafter, referred to as "Document") (attached hereto as "Exhibit 1"). On information and belief, the Document was distributed by Defendant Sheriff Stanley Glanz to fellow members of the Royal Order of Jesters. The Royal Order of Jesters is fraternal organization of the Freemasons / Shriners.

2. In pertinent part, the Document provides that "[Daniel] Smolen schooled [grand jury] petition workers on past *lawsuits against the jail* to incite anger against the Sheriff" and

1

"the Sheriff should resist [the grand jury] [t]o protect the taxpayers from ***another frivolous lawsuit.***" Document (Ex. 1) (emphasis added).[1]

3. During the July 21 deposition of Terry Simonson, spokesman for the Tulsa County Sheriff's Office, counsel for Plaintiffs marked the Document as an exhibit and began questioning Mr. Simonson about it. Mr. Simonson *admitted* that he drafted the Document and that he provided it to Sheriff Glanz.

4. Counsel for Sheriff Glanz objected to any further inquiry about the Document on relevancy grounds, and the parties participated in a telephone hearing before Magistrate Judge T. Lane Wilson. At the conclusion of the telephone hearing, Magistrate Judge Wilson ordered Plaintiffs to file a Brief addressing the relevancy of the Document. Plaintiff files this Brief in compliance with that directive.

5. Discovery under the Federal Rules is limited only by relevance and burdensomeness. *Rich v. Martin Marietta Corp.,* 522 F.2d 333, 343 (10th Cir.1975). Rule 26(b)(1) provides that parties may obtain discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party .... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(l). At the discovery phase of litigation "relevancy" is broadly construed and a request for discovery should be considered relevant if there is "any possibility" that the information sought might be relevant to the claim or defense of any party. *Owens v. Sprint/United Mgmt. Co.,* 221 F.R.D. 649, 652 (D.Kan. 2004) (emphasis added) (citation

---

[1] The Document contains several untrue and libelous statements concerning Plaintiffs attorney, Dan Smolen. For instance, the Document provides that the activist group, We the People, and those who signed the well-publicized grand jury petition, were "manipulated, brainwashed and used by Smolen." Document (Ex. 1). This is a malicious lie without a shred of factual support. Leaving aside the libelous rhetoric in the Document, for the purposes of this Brief, Plaintiffs address only its relevance.

[2] The fact that the Document was created "post-event" does not render it irrelevant. *See,*

2

omitted). The Document is relevant under this broad standard, and Plaintiffs should be permitted to seek discovery concerning the Document.

6. In order to determine the scope of relevant information in this case, one must first consider the scope of the underlying allegations and substantive legal claims. The allegations in Plaintiffs' Amended Complaint include the following:

- Defendant Glanz, as Sheriff and the head of the Tulsa County Sheriff's Office ("TCSO"), was, at all times relevant hereto, responsible for ensuring the safety and well-being of inmates detained and housed at the Tulsa County Jail, including the provision of appropriate medical and mental health care and treatment to inmates in need of such care.... [He is] responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of TCSO and Tulsa County Jail, including the policies, procedures, and/or customs that violated Ms. Revilla, Mr. Brown, Ms. Salgado and Ms. Young's rights.... (Dkt. # 4, ¶ 10).

- Sheriff Glanz ... [failed] to provide prompt and adequate care in the face of known and substantial risks to [each inmate's] health and well being (¶¶ 38–39 [Mr. Brown], ¶ 51 [Ms. Salgado], ¶¶ 62–63 [Ms. Young], ¶¶ 74–75 [Ms. Revilla] ).

- The ***deliberate indifference*** [to each inmate's] serious medical needs ... was in furtherance of and consistent with policies, customs and/or practices that Sheriff Glanz promulgated, created, implemented or possessed responsibility for the continued operation of.... (*Id*. at ¶ 77).

- There are longstanding, systemic deficiencies in the medical and mental health care provided to inmates at the Tulsa County Jail. ***Sheriff Glanz [has] long known of these systemic deficiencies and the substantial risks to inmates like Plaintiffs, but [has] failed to take reasonable steps to alleviate those deficiencies and risks.*** (*Id*. at ¶ 78).

(emphasis added).

7. A civil rights defendant is deliberately indifferent where he "has knowledge of a substantial risk of serious harm to inmates . . . [and] fails to take reasonable steps to alleviate that risk." *Tafoya v. Salazar,* 516 F.3d 912, 916 (10th Cir. 2008). "The official's knowledge of the risk need not be knowledge of a substantial risk to a *particular* inmate, or knowledge of the particular manner in which injury might occur." *Tafoya,* 516 F.3d at 916 (emphasis in original).

3

"[I]t does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk ... for reasons personal to him *or because all prisoners in his situation face such a risk." Farmer v. Brennan,* 511 U.S. 825, 843 (1994) (emphasis added).

8.    The Document is relevant for the purposes of Plaintiffs' deliberate indifference claims.  In particular, the Document was drafted by Sheriff Glanz's spokesman, Mr. Simonson.  The Document was provided to Sheriff Glanz.  And, on information and belief, Sheriff Glanz has distributed the Document to third parties.  It is irrefutable that *someone* from TCSO has distributed the Document.  Otherwise, it never would have made its way to Plaintiffs' counsel.  The Document contains the statements of Sheriff Glanz's agent, and Sheriff Glanz has apparently endorsed those statements.  The Document specifically raises "lawsuits against the jail" brought by Smolen Smolen & Roytman, which would include the case-at-bar.  In addition, the Document refers to these lawsuits as ***"frivolous"***.  In this sense, the Document demonstrates Sheriff Glanz's / TCSO's continuing deliberate indifference.

9.    Specifically, as the Document shows, Sheriff Glanz / TCSO continues to view the Jail lawsuits as "frivolous" despite significant evidence to the contrary.  This lack of reflection or honest self-critical analysis evinces a failure by Sheriff Glanz / TCSO to come to grips with the real and tragic consequences of the Jail's defective medical system.  As Mr. Simonson should know, as a licensed attorney, "frivolous" means "lacking a legal basis or legal merit; not serious; not reasonably purposeful." *United States v. Lain,* 640 F.3d 1134, 1137 (10th Cir. 2011) (brackets and internal quotation marks omitted).  The Oklahoma Legislature has defined "frivolous" as "having ***no reasonable basis in law or fact***, or lacking any good faith legal argument for the extension, modification, or reversal of existing law, or being maintained solely

or primarily for delay or to harass the party filed against." 57 Okla. Stat. § 566(B)(1) (emphasis added).

10. This Court has *already* determined that the case-at-bar, as set forth in the Amended Complaint, is **not** "frivolous". In denying Sheriff Glanz's motion to dismiss, the Court held that Plaintiffs' "allegations sufficiently allege facts stating plausible claims by each plaintiff against Sheriff Glanz in his individual capacity for supervisory liability…." *Revilla v. Glanz,* 7 F. Supp. 3d 1207, 1217 (N.D. Okla. 2014). In addition, the Court has previously denied Sheriff Glanz's motions for summary judgment in other Jail-related litigation prosecuted by Smolen Smolen & Roytman. *See, e.g., Cox v. Glanz,* No. 11-CV-457-JED-FHM, 2014 WL 903101 (N.D. Okla. Mar. 7, 2014); *Poore v. Glanz,* 46 F. Supp. 3d 1191 (N.D. Okla. 2014); *Henderson v. Glanz,* No. 12-CV-68-JED-FHM, 2014 WL 2815742 (N.D. Okla. June 23, 2014). In *Cox*, the Court specifically found that the Plaintiff "present[ed] facts from which a jury could infer that Sheriff Glanz had actual knowledge of a constitutionally infirm condition at the Jail." *Cox,* 2014 WL 903101, at *20.

11. The Document is relevant for the purposes of discovery. At a minimum, discovery concerning the Document is reasonably calculated to lead to the discovery of admissible evidence.[2] Plaintiffs are entitled to inquire as to how Mr. Simonson came to the conclusion that the Jail lawsuits (including the case at bar) are frivolous, why he decided to refer to the Jail lawsuits as "frivolous" in the Document, why the Document was provided to Sheriff Glanz, why it was distributed to third parties, etc.

---

[2] The fact that the Document was created "post-event" does not render it irrelevant. *See, e.g., Cox,* 2014 WL 903101 at *12 ("The Court agrees with the analysis of the First, Fifth, Ninth, and Tenth Circuits with respect to relevance of certain post-incident conduct to municipal liability in a § 1983 case. Certain post-incident conduct may be relevant to the disposition of the Sheriff or the existence of a policy or custom at the time of Mr. Jernegan's July 2009 incarceration and death. Indeed, as noted by the Ninth Circuit, such evidence may be "highly probative" of such an inquiry….").

Respectfully submitted,

s/Robert M. Blakemore
Daniel E. Smolen, OBA #19943
Donald E. Smolen, II, OBA #19944
Robert M. Blakemore, OBA #18656
Smolen Smolen & Roytman, PLLC
701 South Cincinnati
Avenue Tulsa, OK 74119
Phone: (918) 585-2667
Fax: (918) 585-2669

*Attorneys for Plaintiffs*

-and-

Daniel B. Graves, OBA#16656
William C. McLain, OBA# 19349
Rachel E. Gusman, OBA# 22161
Graves McLain PLLC
1437 S. Boulder Ave., Ste. 1010
Tulsa, OK 74119
918-359-6600 (p)
918-359-6605 (f)

*Attorneys for Plaintiff*
*Alma McCaffrey*

## CERTIFICATE OF SERVICE

    I hereby certify that on the 24th day of July, 2015, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel who have entered an appearance in this action.

s/ Robert M. Blakemore