**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

CHRISTINE WRIGHT, *et al.,*      )
          )
          )
      Plaintiffs,      )
          )
          )
v.          )  Case No. 13-CV-315-JED-TLW
          )
STANLEY GLANZ, *et al.,*      )
          )
Defendants.      )

**PLAINTIFF CHRISTINE HAMILTON F/K/A CHRISTINE WRIGHT'S
RESPONSE IN OPPOSITION TO DEFENDANTS
CORRECTIONAL HEALTHCARE COMPANIES, INC.,
ANDREW ADUSEI, PHILLIP WASHBURN AND CHRISTINA ROGERS'
MOTION *IN LIMINE* (DKT. #260)**

Respectfully submitted,

**SMOLEN, SMOLEN & ROYTMAN, PLLC**

/s/ Robert M. Blakemore
Robert M. Blakemore, OBA #18656
bobblakemore@ssrok.com
Daniel E. Smolen, OBA #19943
danielsmolen@ssrok.com
**SMOLEN, SMOLEN & ROYTMAN, PLLC**
701 South Cincinnati Avenue
Tulsa, OK 74119
Phone: (918) 585-2667
Fax: (918) 585-2669
ATTORNEYS FOR PLAINTIFFS

January 12, 2017

# <u>TABLE OF CONTENTS</u>

**Page**

Table of Authorities…………………..…………………………………………iii

Introductory Statement.....…………………………………………………..……..1

Summary of Underlying Substantive Legal Standards………………………..…......2

Discussion………………………………………………………………….........3

    A.    General Legal Framework…………………………………………...3

    B.    Specific Matters Raised by the CHC Defendants…………………………5

        1.    CHC Policies or Jail Policies are Relevant and Admissible………5

        2.    "Code of Silence" Evidence is Potentially Relevant and Admissible…………………………………………………...7

        3.    Other Cases Against These Defendants May be Relevant and Admissible…………………………………………………..7

        4.    References to Improper Standards of Care and/or Causation……10

        5.    Medical Audits and Reports are Relevant and Admissible……....11

        6.    The Reports and Findings of Dr. Howard / AMS are Relevant and Admissible……………………………………………………16

        7.    Plaintiff Has No Intention of Introducing Any Mortality Reviews; Thus this Issue is Moot…………………………….....…….....19

        8.    The Fact that the CHC Defendants Are No Longer Providing Services at the Jail is Relevant………………………….....19

        9.    Plaintiff's Evidence Goes Well Beyond "Rumors" and is Admissible…………………………...…………………………20

        10.    Employment Records of CHC Healthcare Providers are Relevant and Admissible……………………...……………………......21

        11.    Criticism Not Presented by Expert Testimony…………......…22

12.     Testimony Regarding Lack or Weakness of Staffing is Relevant and Admissible……………..………………………...……………22

13.     Investigation Reports From TCSO Involving Ms. Salgado and Elliott Williams are Relevant and Admissible……...……………23

14.     Evidence Regarding Non-party Individuals is Relevant and Admissible……...……………………………......…………23

15.     Evidence of Indifference of Individuals Not Discussed by Plaintiff's Experts……………………………………………..24

16.     While the Phrase "Derogatory Terms" is Vague, Plaintiff Has No Intention of Referring to CHC or CHC Employees by "Derogatory Terms" ……...………….......……………………..……..……24

17.     Evidence of the Falsification of Health Records is Highly Relevant to the Issue of Deliberate Indifference……..…….…..24

18-19.  Plaintiff Has No Intention of Introducing Evidence Concerning Settlements in Other Cases or Evidence Regarding the Use of Settlement Funds; Thus, these Issues Are Moot…...…..…..…..25

20.     Medical Records or Testimony Regarding Other Inmates Who Received Substandard Care is Admissible………......…………25

21.     Evidence of Insufficient Funding of Medical Services is Relevant...…………….......……………….......................…25

22.     Plaintiff Will Offer No Evidence Critical of the Effort to "Resuscitate" Ms. Salgado……......……………………………25

23.     Evidence Regarding Glanz's Convictions and the Grand Jury Report is for the Purposes of Relevant Impeachment……........25

24.     Plaintiff Will Only Offer Evidence Concerning Dr. Adusei's Care of Other Inmates as Relevant to the Municipal Liability Claim ……………………….......................................………………25

25.     Plaintiff Will Offer Ms. Harrington's Live Testimony, Unless She Becomes "Unavailable", and Not Her Affidavit, at Trial ............26

26.     Plaintiff is Unaware of Any Nursing Board Investigation Regarding Defendant Chris Rogers, and Thus, Has no Plans to Offer Evidence of Any Such Investigation…………………........26

## **TABLE OF AUTHORITIES**

*Page*

### *CASES*

*Am. Jr. Proof of Facts 3rd, Policy Misconduct as Municipal Policy or Custom,* § 14 (December 2012) ...................................................................................8, 16

*Barney v. Pulsipher,* 143 F.3d 1299, 1307 (10th Cir. 1998) ................................4

*Bordanaro v. McLeod,* 871 F.2d 1151, 1167 (1st Cir.1989) ...............................9

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) .......................3

*Burke v. Glanz,* No. 11-CV-720-JED-PJC, 2016 WL 3951364, at *28 (N.D. Okla. July 20, 2016) ...........................................................................................24

*Buttice v. G.D. Searle & Co.*, 938 F. Supp. 561, 565-66 (E.D. Mo. 1996) .....................14

*Castro v. Melchor,* 760 F. Supp. 2d 970, 994 (D. Haw. Nov. 15, 2010) ..........................6

*Cf. Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434, 1440 (10th Cir. 1992) ...................................................................................13

*City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ..........................................2

*City of Oklahoma City v. Tuttle*, 471 U.S. 808, 818 (1985) ................................6

*Collins v. City of New York,* 923 F. Supp. 2d 462, 477 (E.D.N.Y. 2013) ......................10

*Cook v. Navistar International Transportation Corp.*, 940 F.2d 207 (7th Cir. 1991) ......13

*Cox v. Glanz,* No. 11-CV-457-JED- FHM, 2014 WL 916646, at *2...........................7, 12

*Dunn ex rel. Albery v. State Harm Mut. Auto. Ins. Co.*, 264 F.R.D. 266 (E.D. Mich. 2009) ...........................................................................11

*Forbis v. City of Portland*, 270 F. Supp. 2d 57, 59-60 (D. Me. 2003) ............................15

*Gaines v. Choctaw Cty. Comm'n,* 242 F. Supp. 2d 1153, 1163 (S.D. Ala. 2003) ...........25

*Garcia v. Salt Lake Cty.,* 768 F.2d 303, 308 (10th Cir. 1985) .........................................23

*Gentile v. County of Suffolk,* 129 F.R.D. 435, 447 (E.D.N.Y. 1990) *aff'd,* 926 F.2d 142 (2d Cir. 1991) ...................................................................................8

*Goka v. Bobbitt,* 862 F.2d 646, 652 (7th Cir.1988) ...........................................................6

*Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1518 (10th Cir. 1995) ...........................4

*Grandstaff v. City of Borger,* 767 F.2d 161, 171 (5th Cir. 1985), *cert. denied,* 480 U.S. 916 (1987) ................................................................................................................9, 15, 19

*Green v. Fulton,* 157 F.R.D. 136, 141 (D. Me. 1994)..........................................................8

*Henry v. County of Shasta,* 132 F.3d 512, 519 (9th Cir.1997) ...........................................9

*Homestore.com, Inc. Securities Litigation*, 347 F.Supp.2d 769, 781 (C.D. Cal. 2004) ...15

*Huitt v. Market Street Hotel Corp.*, CIV. A. No. 91-1488, 1993 WL 245744, at *7 n.2 (D. Kan. June 10, 1993) ...........................................................................................................14

*Kershaw v. Sterling Drug, Inc.*, 415 F.2d 1009, 1011 (5th Cir. 1969) ...........................14

*LaMarca v. Turner,* 995 F.2d 1526, 1536 (11th Cir.1993) ...............................................6

*Langford v. City of Elkhart,* 1992 WL 404443 (N.D. Ind. Apr. 21, 1992)...........................8

*LaSalle v. Medco Research, Inc.*, No. 93 C 5381, 93 C 6475, 1996 WL 252474, at *8, 8 n.11 (N.D. Ill. May 10, 1996) .........................................................................................14

*Layton v. Bd. of County Com'rs of Oklahoma County,* 2013 WL 925807, *8 (10th Cir. Mar. 12, 2013) ................................................................................................................12

*Lopez v. LeMaster,* 172 F.3d 756, 763 (10th Cir. 1999) ..................................................25

*Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 582 (1st Cir.1994) ...................15

*Marsee v. United States Tobacco Co.*, 866 F.2d 319 (10th Cir. 1989) .......................12, 15

*Mendelsohn v. Sprint/United Management Co.,* 466 F.3d 1223, 1231 (10th Cir. 2006).....5

*Metzger v. American Fidelity Assur. Co., 2007 WL 4342082, *1 (W.D. Okla. Dec. 7, 2007)* ...................................................................................................................................4

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) ................2

*Paddack v Dave Christensen, Inc.*, 745 F.2d 1254 (9th Cir. 1984) .................................18

*Perrin v. Anderson*, 784 F.2d 1040, 1046-47 (10th Cir. 1986) .......................................23

Poore v. Glanz, No. 11-CV-797-JED-TLW, 2014 WL 4286481, at *4 (N.D. Okla. Aug. 29, 2014) ..................................................................................................................7

Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir.1980), cert. denied, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981) .................................................................23

Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991) ....................14

Rocky Mountain Helicopters, Inc. v. Bell Helicopters Textron, a Div. of Textron, Inc., 805 F.2d 907, 918 (10th Cir. 1986) ...................................................................10

Sperberg v. Goodyear Tire & Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975)...............4, 6

Tafoya v. Salazar, 516 F.3d 912, 916 (10th Cir. 2008) ......................................................3, 6

Texas E. Transmission Corp. v. Marine Office-Appleton & Cox Corp., 579 F.2d 561, 566 (10th Cir. 1978) .............................................................................................5

Torres v. Kuzniasz, 936 F. Supp. 1201, 1211 (D.N.J. 1996) ...............................................8

Townsend v. Benya, 287 F.Supp.2d 868, 872 (N.D.Ill. 2003) ............................................4

United States v. Frazier, 53 F.3d 1105, 1109-10 (10th Cir. 1995) ...........................15, 16

United States v. McVeigh, 153 F.3d 1166, 1190 (10th Cir. 1998) ....................................4

United States v. Perryman, 2012 WL 1536745, *2 (N.D. Okla. May 1, 2012)...................5

Valley View Angus Ranch, No. CIV-04-191, 2008 U.S. Dist. LEXIS 44181, at *18........15

Vann v. City of New York, 72 F.3d 1040, 1051 (2nd Cir. 1995) .........................................8

Wells Fargo Bank, N.A. ex rel. Certificateholders of Commercial Mortgage Pass-Through Certificates, Series 2006-MF2, 2006-MF3 v. LaSalle Bank Nat. Ass'n, 2011 WL 1303949, *6 (W.D. Okla. Apr. 1, 2011) ....................................................17

Williams v. Muhammad's Holy Temple of Islam, Inc., No. 00 CV 1251, 2006 U.S. Dist. LEXIS 7425, at *19-20 (E.D.N.Y. Feb. 8, 2006) ..............................................14

World Wide Ass'n of Specialty Programs v. Pure, Inc., 450 F.3d 1132, 1139 (10th Cir. 2006) ....................................................................................................................5

Worsham v. A.H. Robins Co., 734 F.2d 676, 686 (11th Cir. 1984) ..................................14

**COMES NOW** the Plaintiff, Christine Hamilton f/k/a Christine Wright ("Plaintiff" or "Plaintiff Wright"), as Special Administrator of the Estate of Lisa Salgado ("Ms. Salgado"), deceased, and respectfully submits her Response in Opposition to Defendants Correctional Healthcare Companies, Inc. ("CHC"), Andrew Adusei, M.D. ("Dr. Adusei"), Phillip Washburn, M.D. ("Dr. Washburn") and Christina Rogers, RN's ("Ms. Rogers") (hereinafter, collectively referred to as the "CHC Defendants") Motion *in Limine* (Dkt. #260) as follows:

<u>**Introductory Statement**</u>

In their Motion *in Limine*, the CHC Defendants exhibit a fundamental misunderstanding as to the nature of Plaintiff's claims and the scope of relevant evidence in this case. Their view of relevancy is overly narrow and contrary to law.  This is not simply a tort case where the scope of relevant evidence would be limited to the immediate circumstances surrounding the specific incident involving Ms. Salgado. Rather, Plaintiff alleges violations of the United States Constitution (pursuant to 42 U.S.C. § 1983).  Plaintiff, as Special Administratrix of Ms. Salgado's estate, brings this claim against the CHC Defendants under a municipal liability theory.  All of Plaintiff's § 1983 claims against the CHC Defendants stem from their promulgation, implementation, maintenance and/or responsibility for policies, practices and/or customs that deprived Ms. Salgado of her federally protected rights.

 Where, as here, a plaintiff must prove the existence of municipal policy or custom and must also prove that the defendant knew of and disregarded an excessive risk to his/her health or safety, the range of relevancy is necessarily broad.  In a case such as this, relevant evidence goes well beyond the immediate circumstances surrounding the

plaintiff and may properly include evidence of other similar incidents, post-event evidence, and evidence of internal policy violations. In their Motion in Limine, the CHC Defendants seek to improperly restrict Plaintiff's evidence in a manner that fails to account for the pertinent legal framework of this action. In other instances, the CHC Defendants raise moot issues or overly vague assertions that would require the Court to rule in a vacuum. The CHC Defendants' Motion in Limine lacks merit and should be denied.

<u>**Summary of Underlying Substantive Legal Standards**</u>

Plaintiff alleges that Ms. Salgado was subjected to unconstitutionally inadequate medical care while housed at the Tulsa County Jail in June of 2011. Plaintiff specifically alleges that CHC, Dr. Washburn and Ms. Rogers were deliberately indifferent to her serious medical needs and that this deliberate indifference was a proximate cause of her death. Plaintiff has also brought negligence claims against these Defendants.

Plaintiff's federal question claims against CHC are being brought under a municipal liability theory. To hold a defendant liable under a municipal liability theory, a plaintiff must demonstrate (1) the existence of a municipal policy or custom by which the plaintiff was denied a constitutional right and (2) that the policy or custom was the moving force behind the constitutional deprivation (i.e. "whether there is a direct causal link between [the] policy or custom and the alleged constitutional deprivation"). *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (citations omitted).

A municipal policy or custom may take the form of:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City,* 627 F.3d 784, 788 (10th Cir.2010) (alterations omitted) (internal quotation marks omitted).

A civil rights defendant is deliberately indifferent where he "has knowledge of a substantial risk of serious harm to inmates . . . [and] fails to take reasonable steps to alleviate that risk." *Tafoya v. Salazar,* 516 F.3d 912, 916 (10th Cir. 2008). Further, in the deliberate indifference context, "[t]he official's knowledge of the risk need not be knowledge of a substantial risk to a *particular* inmate, or knowledge of the particular manner in which injury might occur." *Tafoya,* 516 F.3d at 916 (emphasis in original). *See also Dodds,* 614 F .3d at 1206 (deliberate indifference is sufficiently alleged where a supervisor maintains policies that he knows create a substantial risk of constitutional injury to "people like" the Plaintiff).

In the municipal liability context, "[t]he deliberate indifference standard may be satisfied when the [defendant] has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher,* 143 F.3d 1299, 1307 (10th Cir. 1998).

## Discussion

**A.      General Legal Framework**

"[A] court is almost always better situated during the actual trial to assess the value and utility of evidence. Consequently, a court should reserve its rulings [on a motion in *limine*] for those instances when the evidence is *plainly inadmissible on all potential grounds.*" *Townsend v. Benya*, 287 F.Supp.2d 868, 872 (N.D.Ill. 2003) (emphasis added). As the United States District Court for the Western District of Oklahoma has observed, "[s]ome courts suggest broad rulings on relevance and unfair prejudice are disfavored, and the preferred practice is to rule on evidentiary matters at trial in a developed factual context." *Metzger v. American Fidelity Assur. Co.*, 2007 WL 4342082, *1 (W.D. Okla. Dec. 7, 2007) (citing *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975)).

"[A]ll relevant evidence is admissible," except as otherwise provided by law. Fed. R. Evid. 402. "The scope of relevancy is bounded only by the liberal standard of Rule 401…." *United States v. McVeigh,* 153 F.3d 1166, 1190 (10th Cir. 1998). Under Rule 401, evidence is considered relevant in the event it has "*any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added). "'The determination of whether the evidence is relevant is a matter within the sound discretion of the trial court.'" *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1518 (10th Cir. 1995) (quoting *Texas E. Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 566 (10th Cir. 1978)).

Rule 403 of the Federal Rules of Evidence provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay,

wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. When considering a Rule 403 challenge, the court should "give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Mendelsohn v. Sprint/United Management Co.,* 466 F.3d 1223, 1231 (10th Cir. 2006), *vacated on other grounds*, 552 U.S. 379 (2008). Exclusion of evidence under Rule 403 is an extraordinary remedy that should be used sparingly. *See, e.g., World Wide Ass'n of Specialty Programs v. Pure, Inc.,* 450 F.3d 1132, 1139 (10th Cir. 2006); *United States v. Perryman,* 2012 WL 1536745, *2 (N.D. Okla. May 1, 2012).

**B.      Specific Matters Raised by the CHC Defendants**

**1.      CHC Policies or Jail Policies are Relevant and Admissible**

The CHC Defendants seek to exclude evidence of applicable policies and procedures that govern the running of the Jail and the provision of health treatment to inmates, as well as evidence that Defendants violated applicable policies in their treatment of inmates including Ms. Salgado. MIL at 1.  Defendants state in conclusory fashion that such evidence is "not relevant," "would be more prejudicial than probative," and "is unsupportive [sic] by expert opinion."[1] *Id*.

Defendants exhibit an overly narrow view of the claims at issue in this case and the scope of relevant evidence.  Plaintiff brings a claim of municipal liability; such claim

---

[1]      The CHC Defendants offer no explanation or authority supporting the contention that such evidence would need to be sponsored by expert opinion to be admissible.  The written policies and procedures speak for themselves. Defendants and their employees will testify as to the health treatment that was or was not provided to Ms. Salgado.  Any deviation from the policies will thus be established by the policies and the testimony of these witnesses; expert opinion is unnecessary on this issue.  Moreover, the CHC Defendants' assertion that there is no expert opinion on policy violations is false.  Plaintiff's expert Jackie Moore, RN opines as to numerous policy violations and Scott Allen, M.D. opines as to numerous violations of the NCCHC standards, which mirror CHC policy.

*requires* evidence of unconstitutional policies or customs. *See, e.g., City of Oklahoma City v. Tuttle*, 471 U.S. 808, 818 (1985); *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 694 (1978). Defendants' policies and procedures are not only relevant but *material* evidence. In this regard, it is well-established that the knowing failure to enforce policies is relevant evidence of deliberate indifference. *See, e.g., Tafoya v. Salazar*, 516 F.3d 912, 916, 919 (10th Cir. 2008) (citing *LaMarca v. Turner,* 995 F.2d 1526, 1536 (11th Cir.1993) (finding deliberate indifference where prison official "failed to ensure that his direct subordinates followed the policies he established"), and *Goka v. Bobbitt,* 862 F.2d 646, 652 (7th Cir.1988) (holding that failure to enforce a policy where the policy is critical to inmate safety may rise to the level of deliberate indifference)); *see also Castro v. Melchor*, 760 F. Supp. 2d 970, 994 (D. Haw. Nov. 15, 2010) (holding that failure to apply jail health evaluation policies and procedures was evidence of a conscious disregard of inmates' serious health risks). More generally, the internal policies provide guidelines for the treatment of inmates at the Jail and are thus, facially relevant.

Plaintiff should not be prohibited from introducing or eliciting evidence concerning CHC or Jail policies and procedures. *See Cox v. Glanz,* No. 11-CV-457-JED-FHM, 2014 WL 916646, at *2 (N.D. Okla. Mar. 10, 2014); *Poore v. Glanz,* No. 11-CV-797-JED-TLW, 2014 WL 4286481, at *4 (N.D. Okla. Aug. 29, 2014) ("The Court agrees that Glanz's written policies in existence at the time Poore was in Jail are relevant to the issue of deliberate indifference. While the alleged failure of Glanz to follow or enforce his own written policies does not establish the existence of an unconstitutional policy, those policies are certainly relevant to the deliberate indifference analysis.").

**2.    "Code of Silence" Evidence is Potentially Relevant and Admissible**

The CHC Defendants seek to preclude "reference[s] to any alleged conspiracy/code of silence among healthcare provider[s], law enforcement officers, or correctional officers." MIL at 1-2.  The CHC Defendants contends that "[a]ny such claim is wholly irrelevant and would cause severe prejudice to the Defendants…[and that] there has been no testimony or evidence to support any such claim."  *Id*.

As this Court previously found in rejecting the very same argument raised in another, related, case:

> [P]laintiff asserts that there is evidence that one nurse was instructed not to report misconduct, another nurse witnessed falsification of medical reports, and other witnesses may provide similar testimony. The Court is also generally aware of the summary judgment evidence submitted by plaintiff, which included allegations that the defendant participated in a meeting at which staff were instructed to hide problem medical records from auditors as well as allegations of a nurse who reported witnessing a mental health team meeting—following the discovery of Mr. Jernegan hanging in his cell—at which (according to that nurse) the team members were discussing making their stories "consistent."

*Cox,* 2014 WL 916646, at *3.  Plaintiff will rely on the same evidence in the case-at-bar.  Certainly, such evidence is relevant to the claims of a custom of inadequate care and deliberate indifference.   And Plaintiff should not be precluded from introducing or eliciting such evidence at trial.

**3.    Other Cases Against These Defendants May be Relevant and Admissible**

In the case at bar, Plaintiff intends to use evidence of other related or similar cases to meet her burden of establishing the existence of an unconstitutional practice, policy or custom.  Such evidence is highly relevant. *See, e.g., Am. Jr. Proof of Facts 3rd, Policy Misconduct as Municipal Policy or Custom,* § 14 (December 2012) ("In fact, proof of

custom generally requires evidence of similar incidents in order to establish that the practice was sufficiently widespread and longstanding."). *See also Vann v. City of New York,* 72 F.3d 1040, 1051 (2nd Cir. 1995) ("An obvious need [for more or better supervision] may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents…."); *Green v. Fulton,* 157 F.R.D. 136, 141 (D. Me. 1994) ("Given the plaintiff's need to show that [defendant official] was put on notice of behavior of his subordinates that was likely to result in a constitutional violation in order to prove deliberate indifference on his part… information relating to past similar incidents, or the absence of any such incidents, is highly relevant to the plaintiff's claim."); *Torres v. Kuzniasz,* 936 F. Supp. 1201, 1211 (D.N.J. 1996) ("[S]upervisory opinions and responses to civilian complaints are highly relevant to proving municipal liability under 42 U.S.C. § 1983 for a municipal entity's alleged failure to adequately respond to complaints of police brutality."); *Gentile v. County of Suffolk,* 129 F.R.D. 435, 447 (E.D.N.Y. 1990) *aff'd,* 926 F.2d 142 (2d Cir. 1991) ("Defendants' assertion that the SIC report is inadmissible as lacking in probative value because it does not deal with the underlying… criminal case is without merit. It is sufficient for purposes of Rules 401 and 402 that the report tends to support an inference of an affirmative link between municipal policy and the *type* of individual behavior involved here."); *Langford v. City of Elkhart,* 1992 WL 404443 (N.D. Ind. Apr. 21, 1992) ("Plaintiff's complaints… include claims of municipal and supervisory liability based upon negligent hiring, failure to train, and a municipal policy or custom of violence and intimidation…. These claims portend a broad inquiry into police practices and procedures, citizen

complaints, similar incidents involving the use of force, and internal disciplinary actions, extending well beyond the immediate circumstances surrounding plaintiffs' arrests."). While the CHC Defendants assert that evidence regarding other similar cases is irrelevant, this evidence is "generally require[d]" in a case, such as this, involving claims of municipal liability.

Further, post-event evidence, such as the Elliott Williams video and records and testimony concerning Dr. Washburn's mistreatment of Williams, is relevant in establishing the existence and continuation of the unconstitutional policy of inadequate medical care at the Jail. *See, e.g., Grandstaff v. City of Borger,* 767 F.2d 161, 171 (5th Cir. 1985), *cert. denied,* 480 U.S. 916 (1987) ("The disposition of the policymaker may be inferred from his conduct *after* the events of that night. Following this incompetent and catastrophic performance, there were no reprimands, no discharges, and no admissions of error. The officers testified at the trial that *no changes had been made in their policies.* If that episode of such dangerous recklessness obtained so little attention and action by the City policymaker, the jury was entitled to conclude that it was accepted as the way things are done and have been done in the City of Borger.") (emphasis added); *Bordanaro v. McLeod,* 871 F.2d 1151, 1167 (1st Cir.1989) ("Postevent evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right."); *Henry v. County of Shasta,* 132 F.3d 512, 519 (9th Cir.1997) ("[W]e reiterate our rule that *post-event evidence is not only admissible* for purposes of proving the existence of a municipal defendant's policy or custom, *but is highly probative* with respect to that inquiry.")(emphasis added); *Harrigan ex rel. Harrigan v. Marion Cnty.,* 2013 WL 5274407, *7 (D. Or. Sept. 18, 2013) ("Postevent evidence that

there were *no* reprimands, discharges, admissions of error, or ***changes to policies is admissible*** evidence.") (emphasis added); *Collins v. City of New York,* 923 F. Supp. 2d 462, 477 (E.D.N.Y. 2013) ("[T]he ***lack of any corrective action*** might also reflect a tacit policy on Hynes's part to condone whatever his subordinates deemed necessary to secure a conviction.") (emphasis added). *See also Rocky Mountain Helicopters, Inc. v. Bell Helicopters Textron, a Div. of Textron, Inc.,* 805 F.2d 907, 918 (10th Cir. 1986) (In products liability case, Tenth Circuit determined that "[i]t would strain the spirit of the remedial measure prohibition in Rule 407 to extend its shield to evidence contained in post-event tests or reports.").

### 4.    References to Improper Standards of Care and/or Causation

The CHC Defendants next seek to limit the testimony of Plaintiff's witnesses and preclude them from using laymen's terms; instead, Defendants seek to require Plaintiff's witnesses to refer solely to allegedly applicable legal standards of care (*i.e.*, "reasonable degree of medical certainty."). As a practical matter, this is a wholly unworkable proposition. As a legal matter, this case involves alleged Constitutional violations and the relevant standard is deliberate indifference to serious medical needs. Limiting witnesses to testifying in terms of a "reasonable degree of medical certainty" impermissibly limits relevant and admissible evidence of deliberate indifference and would be confusing to the jury. A defendant's action may be deliberately indifferent without being subject to a "reasonable degree of medical certainty." The Court will instruct the jury as to the applicable standard of care. Further, limiting testimony to language which is a hybrid of legal and medical jargon simply makes it more difficult for

Plaintiff to present her case clearly to the jury.[2]  Importantly, Defendants have not identified any specific testimony they seek to preclude.  If, at trial, Defendants believe that a witness's testimony does not indicate a violation of the applicable standard of care, traditional litigation tools such as cross-examination or impeachment through other evidence are available to Defendants prior to the Court's instructing the jury. Defendants' Motion should be denied.

### 5.    Medical Audits and Reports are Relevant and Admissible

The CHC Defendants further seek to preclude evidence of audits, reports and other documentation created during independent third party investigations of the Jail's health care delivery system.   Such documents identify numerous inadequacies in Defendants' treatment of the serious medical and mental health needs of inmates. The relevancy of these documents cannot be disputed as they go directly to Defendants' notice of deficient practices in the Jail and thus are extremely probative of deliberate indifference, as well as the existence of a policy or custom.[3]  Indeed, the Tenth Circuit

---

[2]     Defendants cite to Federal Rule of Evidence 702, which provides that an expert witness may testify if such testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue."  Limiting testimony to legal/medical terms of art, without providing an opportunity to explain in layman's terms, would not "assist the trier of fact to understand the evidence;" granting Defendants' request would thwart the express purpose of Rule 702.

[3]     Defendants' reliance on *Dunn ex rel. Albery v. State Harm Mut. Auto. Ins. Co.*, 264 F.R.D. 266 (E.D. Mich. 2009) is misplaced.  That case involved a home health care agency's claim for reimbursement under the Michigan No-Fault Insurance Act for benefits provided to a motor vehicle accident victim.  The home health care agency initially represented that it was accredited and that its employee medical providers were properly licensed.  *Dunn*, 264 F.R.D. at 271.  The agency sought to preclude evidence of its accreditation, or lack thereof.  *Id*. The court held such evidence was irrelevant because accreditation was not necessary for the agency to provide the services for which it sought to recover, and that accreditation did not make it more or less probable that the agency was entitled to receive no-fault insurance benefits.  *Id*.  Here, Plaintiff has gathered evidence that Defendants were on notice of numerous inadequacies in the treatment of

Court of Appeals has relied on such audit reports in determining that "a reasonable jury could find that the County's willingness—demonstrated by inaction—to permit seriously ill inmates to remain unmonitored in their cells evinces deliberate indifference for purposes of establishing municipal liability." *Layton v. Bd. of County Com'rs of Oklahoma County,* 2013 WL 925807, *8 (10th Cir. Mar. 12, 2013). *See also Cox v. Glanz,* 2014 WL 916646 at *5 ("[D]ocuments relating to the 2007 NCCHC audit of the Jail's medical system may be relevant to the issue of whether defendant was on notice of a deficient system of medical / mental health care and whether he reacted to or changed any practices at the Jail following such notice may be relevant to the deliberate indifference analysis or the existence of allegedly unconstitutional practices at the Jail.").

Furthermore, and contrary to the CHC Defendants' argument, such documents do not run afoul of the hearsay rule. The audit reports, including the NCCHC Reports, are admissible under several hearsay exceptions. First, it is well settled that documents introduced for the purpose of demonstrating notice and/or actual or constructive knowledge do not constitute hearsay. The Tenth Circuit's decision in *Marsee v. United States Tobacco Co.*, 866 F.2d 319 (10th Cir. 1989), is particularly instructive. In *Marsee*, an administratrix brought a product liability action against a tobacco company arising out of her son's death allegedly caused by his use of defendant's snuff tobacco products. *Id.* at 321. The trial court had admitted scientific articles submitted by the plaintiff that indicated that snuff posed a health threat to users. *Id.* at 325. After such admission, the defendant offered countering scientific articles on the issue of notice. *Id.* The trial court

---

inmates' serious medical and mental health problems, including documents created and statements made during the NCCHC audit performed as part of the accreditation process. Additionally, CHMO was *required* to comply with NCCHC and ACA standards for accreditation. *See* Health Services Agreement, Ex. 1, p. 6, Section III.

permitted their admission as well. *Id*. On appeal, the plaintiff argued that the trial court

erred in admitting defendant's series of learned articles because they constituted hearsay.

*Id*.   The Tenth Circuit rejected this argument, concluding that:

> [t]he hearsay rule is irrelevant in this instance . . . since the articles were not admitted to prove the truth of the matter asserted. Instead, they were admitted on the issue of whether the defendant had notice of the potential dangers its product posed to consumers.

*Id*. (emphasis added). *Cf. Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d

1434, 1440 (10th Cir. 1992) (affirming admission of evidence of similar incidents to

prove notice).

Although the evidence at issue in *Marsee* were scholarly articles and not external

audits, that is not a distinction that makes any difference. For example, in *Cook v.*

*Navistar International Transportation Corp.*, 940 F.2d 207 (7th Cir. 1991), the Seventh

Circuit applied *Marsee* to industry publications and found that such publications –

offered to demonstrate actual or constructive knowledge of a reasonably competent

design engineer – were improperly excluded as hearsay. *Id*. at 212-13. The Court

concluded:

> It is true, as plaintiff argues on appeal, that the court should not have excluded the evidence in question as hearsay. The evidence was not offered for the truth of the matter asserted, it was offered to show actual or constructive knowledge and was admissible on that basis.

*Id*. at 213 (emphasis added).

Numerous other courts have similarly held that documents do not constitute

hearsay when relevant to the issue of notice and/or actual or constructive knowledge. *See,*

*e.g., Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("The

reports cited by plaintiffs would not be hearsay if they were offered for the purpose of proving something other than the truth of the matters stated therein, such as whether appellees had notice"), superseded on other grounds; *Worsham v. A.H. Robins Co*., 734 F.2d 676, 686 (11th Cir. 1984); *Kershaw v. Sterling Drug, Inc*., 415 F.2d 1009, 1011 (5th Cir. 1969) (concluding that medical articles were not hearsay and were properly admitted to show that defendant reasonably should have known of existence and nature of particular disease); *Williams v. Muhammad's Holy Temple of Islam, Inc*., No. 00 CV 1251, 2006 U.S. Dist. LEXIS 7425, at *19-20 (E.D.N.Y. Feb. 8, 2006) (denying motion in limine to exclude third party correspondence under "well-recognized exception to the hearsay rule" where offered to demonstrate notice); *Buttice v. G.D. Searle & Co*., 938 F. Supp. 561, 565-66 (E.D. Mo. 1996) (concluding that excerpts from medical texts were not hearsay when used to show notice); *LaSalle v. Medco Research, Inc*., No. 93 C 5381, 93 C 6475, 1996 WL 252474, at *8, 8 n.11 (N.D. Ill. May 10, 1996) (in securities case, publications – including New York Times, Wall Street Journal, and U.S. Today – deemed not hearsay because they were not offered for the truth of the matter asserted therein, but were instead offered to prove plaintiffs' actual or constructive knowledge, *i.e.*, to show that a reasonable person would have had serious concerns as to veracity of predictions for drug's approval); *Huitt v. Market Street Hotel Corp*., CIV. A. No. 91-1488, 1993 WL 245744, at *7 n.2 (D. Kan. June 10, 1993) ("The statements that McMichael made to Angle are relevant as to the issue of notice, and thus, are not hearsay.") (citing *Marsee*, 866 F.2d at 325).

Here, the audits, reports and corresponding documentation are probative of Defendants' knowledge of ongoing constitutional deprivations and continuous refusal to

address the same, are not hearsay and should be admitted.[4] *See, e.g., Forbis v. City of Portland*, 270 F. Supp. 2d 57, 59-60 (D. Me. 2003) ("'A causal link may also be forged if there exists a known history of widespread abuse sufficient to alert a supervisor to ongoing violations. When the supervisor is on notice and fails to take corrective action, say, by better training or closer oversight, liability may attach.'") (citing *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 582 (1st Cir.1994)); *Grandstaff*, 767 F.2d at 171. Such evidence is not only material, but arguably *necessary* for Plaintiff to succeed on her claim of municipal liability. Therefore, Defendants' contention that such evidence is *substantially outweighed* by the danger of unfair prejudice is without merit.

Finally, Defendants' reliance on the Health Insurance Portability and Accountability Act ("HIPAA") is disingenuous at best. A number of the individuals whose information is contained in the audits, reports and corresponding documentation have consented to their disclosure.[5] Identifying information relating to non-consenting individuals, will be redacted prior to trial to prevent its submission to the jury.

---

[4]    In addition, much of the documents, including the NCCHC Reports, are records of regularly conducted activity and routinely admitted into evidence under Rule 803(6). *See United States v. Frazier*, 53 F.3d 1105, 1109-10 (10th Cir. 1995) (holding that a compliance audit performed by an independent contractor was admissible under the regularly conducted activity exception of Rule 803); *In re Homestore.com, Inc. Securities Litigation*, 347 F.Supp.2d 769, 781 (C.D. Cal. 2004) (documents created in the normal course of the auditing business are excepted from the hearsay rule). The reports are also admissible as public records pursuant to Fed. R. Evid. 803(8), which provides that a record or statement of a public office is admissible if it sets out (1) the office's activities, (2) a matter observed while under a legal duty to report, or **(3) "in a civil case…factual findings from a legally authorized investigation."** Fed. R. Evid. 803(8) (emphasis added). Additionally, the identified evidence was relied upon by Plaintiff's experts and therefore may be admissible under Rule 703. *See, e.g., Valley View Angus Ranch,* No. CIV-04-191, 2008 U.S. Dist. LEXIS 44181, at *18; *Paddack,* 745 F.2d at 1261.

[5]    Counsel for Plaintiff represent several of these individuals, or, in the case of deceased former inmates, the representatives of their estates.

6.       **The Reports and Findings of Dr. Howard Roemer / AMS are Relevant and Admissible**

The Health Services Agreement between Defendant Correctional Healthcare Management of Oklahoma, Inc. ("CHMO") and the Tulsa County Board of County Commissioners ("BOCC"), provided that CHMO would be responsible for the medical treatment of inmates and required quarterly audits by either a TCSO full time health care professional or by a health care professional consultant. Ex. 1 at "Exhibit A."   Pursuant to this Agreement, the Board hired Advanced Medical Systems, Inc. ("AMS"), to conduct medical reviews or audits at the Jail.  *See* Professional Services Agreement, Ex. 2.  The Roemer-AMS Reports themselves are attached hereto as Ex. 3.  The audits and reviews, conducted by Dr. Roemer, revealed that a number of the deficiencies with respect to the medical and mental health treatment of inmates were ongoing, that no remedial action had taken place. This evidence is extremely probative of Plaintiff's claims of deliberate indifference and a continuing pattern or "custom" of unconstitutional medical care.

The CHC Defendants first assert that the AMS-Roemer reports are irrelevant because they do not involve Ms. Salgado's care.  MIL at 6.  However, as discussed *supra*, in a case such as this, relevant evidence goes well beyond the immediate circumstances surrounding the plaintiff and may properly include evidence of other similar incidents, post-event evidence, and evidence of internal policy violations. *See, e.g.,* 13 *Am. Jur. Proof of Facts 3rd, Policy Misconduct as Municipal Policy or Custom*, § 14 (December 2012).  The Roemer-AMS Report reflect a number of deaths and bad medical outcomes attributed to substandard care.  The Reports are relevant and admissible.

Defendants further argue that the Roemer-AMS Reports are inadmissible hearsay. This argument, too, lacks merit.  First, under Rule 801(d), a statement is not hearsay if it

is offered against a party and is the party's own statement or a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.  Fed.R.Evid. 801(d)(2).  "Party-opponent admissions are admissible, *despite being an opinion*, so long as that evidence is otherwise admissible."  *Wells Fargo Bank, N.A. ex rel. Certificateholders of Commercial Mortgage Pass-Through Certificates, Series 2006-MF2, 2006-MF3 v. LaSalle Bank Nat. Ass'n,* 2011 WL 1303949, *6 (W.D. Okla. Apr. 1, 2011) (emphasis added) (citing *Graham,* 30B Federal Practice and Procedure § 7015, at 204 (interim ed. 2006)).  Here, Roemer-AMS was acting as an agent for Tulsa County and its reports are concerning a matter within the scope of the agency.  They are admissible under Rule 801(d).

In addition, the AMS-Roemer Reports fall under the public records exception to the hearsay rule.  Specifically, a "record or statement of a public office" is excepted if it sets out "in a civil case … factual findings from a legally authorized investigation…." Fed. R. Evid. 803(8)(A)(iii).  Plainly, Roemer-AMS's findings fit the bill.

Additionally, the Roemer-AMS audits, like the audits of the NCCHC, ICE, DOJ, ACA and FBI, fall within the regularly conducted activity exception of Fed. R. Evid. 803(6).  *See United States v. Fraizer*, 53 F.3d 1105, 1109-10 (10th Cir. 1995) (holding that a report created by an independent contractor hired by a government agency to perform a compliance audit was admissible because (1) the auditor was bound by contract to prepare the report and was therefore interested in insuring the report was accurate, (2) the auditor had experience in creating the kinds of report at issue,[6] and (3)

---

[6]    Dr. Roemer has previously testified that he has been involved in consulting regarding quality improvement in the delivery of medical care since the early 1980s,

the auditor was a neutral party with nothing to gain from possible litigation).

In arguing that Mr. Roemer's report is not admissible, Defendants inexplicably rely on the case of *Paddack v Dave Christensen, Inc.*, 745 F.2d 1254 (9th Cir. 1984). In that case, trustees of a joint labor management employee trust fund sued affiliated company employers for breach of collective bargaining agreement. *Paddack*, 745 F.2d at 1256. The trial court excluded evidence of an audit of the employers' contributions but the Ninth Circuit actually reversed the judgment below, finding that although the audits were not a regularly conducted activity, they were admissible to show the basis of plaintiff's expert witness' opinion. *Id*. at 1262.

The holding in *Paddack* that the audit at issue was not admissible as substantive evidence is inapplicable to the case at bar for two (2) reasons. First, in concluding that the audit in *Paddack* was not record of a regularly conducted business activity, the court emphasized that the audit was not conducted pursuant to a regular compliance audit procedure. *Id*. at 1258. There was no requirement that audits be performed on a regular basis, unlike in this case or in *Fraizer*, 53 F.3d 1105, where the audit was performed pursuant to a routine and contractually required compliance review. Second, *the audit was ordered by the <u>plaintiff</u> in response to recognized irregularities in defendants' contributions*; that is, the plaintiff ordered the audit in anticipation of litigation:

> [T]he district court's finding that [the audit reports] were prepared in anticipation of litigation precludes their admission. In this case the Trustees employed Touche Ross only after they suspected that the Employer's contributions were deficient. A document prepared for purposes of litigation is not a business record because it is lacking in trustworthiness. This is because where the only function

---

devoting approximately half of his practice to it. *See* Depo. of Dr. Howard Roemer (Cox Case), Ex. 4, p. 14:15-24.

> that the report serves is to assist in litigation or its preparation, many of the normal checks upon the accuracy of business records are not operative.

*Id*. at 1258-59 (9th Cir. 1984) (citations, quotations admitted).

The AMS audit was performed pursuant to a contractually mandated quarterly compliance review.  It was not performed in anticipation of litigation and it was certainly not ordered by the Plaintiff.  Rather, the Roemer-AMS review was ordered *by Defendants* in fulfillment of contractual requirements.  This case is much closer to *Frazier* than to *Paddack*.

Furthermore, in *Paddack* the judgment of the district court was reversed and the trial court was <u>directed to consider the audit reports</u> for the purpose of explaining the opinion of plaintiff's expert.  *Id*. at 1262-63.  Here, Plaintiff's experts has relied on Dr. Roemer's report in reaching his conclusions and the same may be admissible under Rule 703. *See, e.g*., *Valley View Angus Ranch,* No. CIV-04-191, 2008 U.S. Dist. LEXIS 44181, at *18; *Paddack,* 745 F.2d at 1261.

Finally, Defendants' reliance on HIPAA is again misplaced.  Plaintiff will redact the identifying information of any non-consenting individuals contained in Dr. Roemer's reports.

Defendants' motion should be denied.

### 7.    Plaintiff Has No Intention of Introducing Any Mortality Reviews; Thus, this Issue is Moot

Because Plaintiff has no plan to introduce any mortality reviews into evidence, this matter is moot.

### 8.    The Fact that the CHC Defendants Are No Longer Providing Services at the Jail is Relevant

CHC was under contract to provide medical and mental health care services to inmates at the Jail from June 20, 2005 through November 1, 2013.  As this Court knows, there is evidence that despite knowing of vast problems with CHC and the Jail's medical system, Former Sheriff Glanz, TCSO and CHC took no discernable action to alleviate the substantial risks to inmates.  Significantly, for many years, Former Sheriff Glanz failed to remove or replace CHC as the Jail medical contractor -- going so far as to rate CHC a "9 out of 10" -- even after multiple Jail deaths, including the death of Ms. Salgado, and in the face of overwhelming evidence that the "care" provided by CHC was wholly and dangerously inadequate.  Thus, the TCSO Defendants' failure, until November 2013, to replace CHC as the medical provider at the Jail is relevant and admissible to the issue of an unconstitutional custom, as well as the issue of deliberate indifference.  *See, e.g., Grandstaff v. City of Borger,* 767 F.2d 161, 171 (5th Cir. 1985), *cert. denied,* 480 U.S. 916 (1987) ("The disposition of the policymaker may be inferred from his conduct ***after*** the events of that night. Following this incompetent and catastrophic performance, there were no reprimands, no discharges, and no admissions of error. The officers testified at the trial that ***no changes had been made in their policies.***") (emphasis added).

### 9.      Plaintiff's Evidence Goes Well Beyond "Rumors" and is Admissible

The CHC Defendants seek to exclude evidence of "rumors," particularly purported rumors related to Defendants' falsification and destroying of records. As this Court is aware, however, this evidence goes well beyond rumor.  Plaintiff has gathered extensive substantiated evidence of Defendants' falsification and destroying of records relating to the medical and mental health treatment of inmates.  Such evidence is not testimony of "rumors;" several witnesses will testify at trial that they either witnessed the

falsification or destruction of records, including the falsification of Ms. Salgado's records, or actually participated in such conduct. *See, e.g.,* Aff. of Tammy Harrington, Ex. 5 at ¶ 19. This evidence is obviously relevant to Plaintiff's claims of deliberate indifference in this lawsuit and its probative value is not substantially outweighed by a danger of unfair prejudice.

> **10.   Employment Records of CHC Healthcare Providers are Relevant and Admissible**

The CHC Defendants wish to exclude evidence from CHC employment files. Again, Defendants do not identify specific evidence; rather, they seek to exclude a broad category of evidence and Plaintiff is unable to provide a specific response thereto. Nonetheless, Plaintiff would state that there is information contained in the employment files produced by Defendants that is relevant to this litigation, particularly documents demonstrating that CHC employees expressed concern about the medical care being provided to inmates.[7]  Further, there is evidence in the employment file of Karen Metcalf, LPN, who was responsible for monitoring Ms. Salgado, which indicates that she had been disciplined several times and was ill-equipped to supervise Ms. Salgado.  Such evidence is relevant to the issues of notice and inadequate supervision and is highly probative of Plaintiff's claims of deliberate indifference and municipal liability as set forth above. The probative value of this evidence is not substantially outweighed by the danger of unfair prejudice.  Because Defendants have not identified specific evidence they seek to exclude, and because evidence contained in the some employee files is unquestionably

---

[7]      For example, there is a memo in Defendant Taylor's file indicating she actually contacted CHMO's human resources department prior to Mr. Jernegan's death regarding concerns that CHMO would lose the contract with the Jail because of the lack of care being provided to inmates. *See* Memo to File, Ex. 6 (CHM 559).

relevant to key issues in this case, Defendants' motion in limine should be denied and the Court should reserve its ruling for specific objections raised in the context of trial.

**11.  Criticisms Not Presented by Expert Testimony.**

Defendants seek to exclude "criticisms and claims that were not advanced by Plaintiff's expert."  Defendants erroneously contend that:

> It would be error to permit Plaintiff, her counsel or Plaintiff's witnesses to raise issues or to give lay opinions on any medical, nursing, or mental health issue, such as a description of the exact injury, standards of care, causation of the injury, and medical or nursing diagnosis, etc.

MIL at 19.

A majority of the witnesses in this case will be medical personnel employed by CHC; their opinions with respect to Ms. Salgado's condition and treatment at the time of injury are factually relevant to understand why they provided her, or failed to provide her, the treatment they did.  Moreover, criticisms set forth in the numerous audits and reports discussed herein are relevant to the issue of Defendants' notice of the inadequacy of inmate health care.  Defendants do not identify any specific evidence they seek to exclude and they cite no authority for the requested limitation.  Defendants' motion should be denied.

**12.   Testimony Regarding Lack or Weakness of Staffing is Relevant and Admissible**

Contrary to Defendants' bald assertions, Plaintiff has gathered evidence that the staffing and training provided at the Jail was inadequate to ensure appropriate medical treatment was provided to inmates, and numerous witnesses will testify to this.  Such evidence is relevant and admissible.  *See Garcia v*. *Salt Lake Cty*., 768 F.2d 303, 308 (10th Cir. 1985) ("Deliberate indifference to serious medical needs may be shown by

proving there are such gross deficiencies in staffing, facilities, equipment, or procedures that the inmate is effectively denied access to adequate medical care."). *See also Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981).

### 13.    Investigation Reports From TCSO Involving Ms. Salgado and Elliott Williams are Relevant and Admissible

The CHC Defendants next argue that any investigative reports generated by TCSO and OSBI are hearsay and irrelevant.  MIL at 13.  However, such reports fall under exceptions to the hearsay rule.   The reports were prepared by a TCSO representative, as part of investigations into the death of Ms. Salgado and Eliott Williams, and they reference statements of TCSO employees and agents regarding matters relating to their employment. The reports themselves are not hearsay under Fed. R. Evid. 801(d)(2)(D), and the statements of employees or agents on matters within the scope of that relationship and while it existed would also fall under the definition of nonhearsay under that same rule. The OSBI report(s) are admissible under Fed. R. Evid. 803(8) and, to the extent that they reference statements of employees or agents, the statements within the reports would likely be admissible under Rule 801(d)(2)(D). *See Perrin v. Anderson*, 784 F.2d 1040, 1046-47 (10th Cir. 1986).   Reports involving deaths at the Jail are relevant for the reasons stated *supra*.

### 14.    Evidence Regarding Non-Party Individuals is Relevant and Admissible

Again, Plaintiff has brought allegations against CHC both under a municipal liability theory (for Constitutional violations) and vicarious liability (for negligence). Under such theories of liability, Plaintiff was not required to sue all, or any one,

individual wrongdoer.  There is nothing prohibiting Plaintiff from introducing evidence that non-party employees or agents of CHC, such as Nurse Metcalf, were deliberately indifferent or negligent.  Indeed, Plaintiff must be permitted to introduce such evidence.

**15.    Evidence of Indifference of Individuals Not Discussed by Plaintiff's Experts**

Defendants cite no authority for the proposition that Plaintiff is barred from presenting evidence of wrongdoing committed by individuals not identified by Plaintiff's experts.  And Plaintiff is aware of no such authority.  CHC has provided no basis for any order in limine on this subject.

**16.    While the Phrase "Derogatory Terms" is Vague, Plaintiff Has No Intention of Referring to CHC or CHC Employees by "Derogatory Terms"**

Plaintiff does not intend to use "derogatory terms" at trial.  However, this phrase is vague.  Plaintiff, counsel and witnesses should not be prohibited from using critical language at trial.

**17.    Evidence of the Falsification of Health Records is Highly Relevant to the Issue of Deliberate Indifference**

There is evidence that medical records, including Ms. Salgado's medical records, were falsified by responsible CHC personnel.  *See, e.g.,* Aff. of Tammy Harrington, Ex. 5 at ¶ 19.  Such evidence is plainly relevant to the issue of deliberate indifference. *See, e.g., Burke v. Glanz,* No. 11-CV-720-JED-PJC, 2016 WL 3951364, at *28 (N.D. Okla. July 20, 2016) ("A jury could … infer from the evidence that Glanz and Albin were aware that the Jail's system of medical care was so deficient that certain inmate medical records would need to be concealed from auditors in order for the Jail to pass the NCCHC audits.").

**18-19.  Plaintiff Has No Intention of Introducing Evidence Concerning Settlements in Other Cases or Evidence Regarding the Use of Settlement Funds; Thus, these Issues Are Moot**

**20.    Medical Records or Testimony Regarding Other Inmates Who Received Substandard Care is Admissible**

As established numerous times throughout this Response, evidence regarding other instances of inadequate healthcare provided to inmates at the Jail is relevant and admissible.  And any HIPAA concerns can be addressed through redaction of records.

**21.    Evidence of Insufficient Funding of Medical Services is Relevant**

There is evidence in this case, including the depositions of Glanz and former Chief Weigel, that funding of the Jail medical system was insufficient to provide adequate and qualified staffing. Such evidence is relevant and admissible. *See*, *e.g.*, *Gaines v. Choctaw Cty. Comm'n*, 242 F. Supp. 2d 1153, 1163 (S.D. Ala. 2003); *Lopez v. LeMaster*, 172 F.3d 756, 763 (10th Cir. 1999).

**22.    Plaintiff Will Offer No Evidence Critical of the Effort to "Resuscitate" Ms. Salgado**

**23.    Evidence Regarding Glanz's Convictions and the Grand Jury Report is for the Purposes of Relevant Impeachment**

This issue is addressed, at length, in Plaintiff's Response to the TCSO Defendants' Moition in Limine.  Plaintiff adopts and fully incorporates that argument herein.

**24.    Plaintiff Will Only Offer Evidence Concerning Dr. Adusei's Care of Other Inmates as Relevant to the Municipal Liability Claim**

As established numerous times throughout this Response, evidence regarding other instances of inadequate healthcare provided to inmates at the Jail is relevant and admissible.  To the extent that Dr. Adusei was involved in that treatment, his name will

likely surface during trial.  Such evidence is not foreclosed by Rules 401, 402 or 403, and the CHC Defendants have failed to show otherwise.

**25.     Plaintiff Will Offer Ms. Harrington's Live Testimony, Unless She Becomes "Unavailable", and Not Her Affidavit, at Trial**

Plaintiff agrees that Ms. Harrington's Affidavit is hearsay, for the purposes of trial, and will not be offered in lieu of live testimony, unless Ms. Harrington is "unavailable" at the time of trial.

**26.     Plaintiff is Unaware of Any Nursing Board Investigation Regarding Defendant Chris Rogers, and Thus, Has no Plans to Offer Evidence of Any Such Investigation**

Plaintiff is unaware of any Nursing Board investigation of Chris Rogers. Therefore, barring any new information to the contrary, Plaintiff has no intention of introducing evidence of a Nursing Board investigation into Ms. Rogers' conduct.

WHEREFORE, premises considered, Plaintiff respectfully requests that this Court deny the CHC Defendants' Defendants Motion in Limine (Dkt. #260).

Respectfully submitted,

/s/ Robert M. Blakemore
Robert M. Blakemore, OBA#18656
Smolen, Smolen & Roytman, PLLC
701 S. Cincinnati Ave.
Tulsa, OK 74119
(918) 585-2667
(918) 585-2669 Fax
bobblakemore@ssrok.com

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of January 2017, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.

/s/ Robert M. Blakemore