IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

BRIDGET REVILLA,                               )
                                               )
                    Plaintiff,                 )        Case No.: 13-CV-315-JED-TLW
                                               )
v.                                             )
                                               )
CORRECTIONAL HEALTHCARE                        )
     COMPANIES, INC., *et al.*                 )
                                               )
                    Defendants.                )

_____

**MOTIONS IN LIMINE OF DEFENDANTS
CORRECTIONAL HEALTHCARE COMPANIES, INC., ANDREW ADUSEI, M.D.,
PHILLIP WASHBURN, M.D., AND CHRISTINA ROGERS, RN**[1]
_____

---

[1] Correctional Healthcare Management of Oklahoma, Inc. and Correctional Healthcare Management, Inc. merged into Defendant Correctional Healthcare Companies, Inc. and are no longer in existence. Defendant incorporates and adopts by reference to the separate Motion for Summary Judgment on behalf of CHM and CHMO on that issue.

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS .................................................................................................*i*

TABLE OF AUTHORITIES ........................................................................................*ii*

Motion in Limine 1:   CHC or jail policies and procedures ...........................................1

Motion in Limine 2:   Testimony with regard to a code of silence .................................1

Motion in Limine 3:   Unrelated or other cases against these Defendants ......................2

Motion in Limine 4:   References to improper standards of care and/or causation........................3

Motion in Limine 5:   NCCHC, ICE, DOJ, ACA, CRCL, ODHS, FBI audits or reports ..............3

Motion in Limine 6:   Documents, review, AMS reports and testimony of Dr. Howard
Roemer ...................................................................................6

Motion in Limine 7:   Internal Reviews and Mortality Reviews ........................................8

Motion in Limine 8:   Testimony or evidence regarding these Defendants no longer
providing care at Tulsa County Jail .............................................9

Motion in Limine 9:   Testimony regarding rumors or information the individual has
heard........................................................................................10

Motion in Limine 10: Employment records of CHC healthcare providers .................................11

Motion in Limine 11: Criticisms not presented by expert testimony .............................12

Motion in Limine 12: Testimony regarding lack or weakness of staffing....................................12

Motion in Limine 13: Investigation reports from the Tulsa County Sheriff's Department
or OSBI ...................................................................................13

Motion in Limine 14: Testimony or evidence of negligence or indifference of healthcare
providers not specifically named in this lawsuit .........................................14

Motion in Limine 15: Testimony or evidence of negligence or indifference of healthcare
providers not specifically testified to by endorsed experts ........................15

Motion in Limine 16: References to Defendants, or employees of Defendants,
by derogatory terms....................................................................15

Motion in Limine 17:  Reference to fraud or destruction of records by healthcare providers ........................................................................................15

Motion in Limine 18:  Testimony or evidence regarding settlement or verdicts in other cases ...............................................................................................16

Motion in Limine 19:  Testimony regarding proposed use of settlement or verdict funds ...........17

Motion in Limine 20:  Medical records or testimony regarding patients other than Ms. Revilla..............................................................................................17

Motion in Limine 21:  Testimony and evidence regarding a lack of funding or insufficient budget .......................................................................18

Motion in Limine 22:  Testimony and evidence regarding Stanley Glanz's misdemeanor and the Grand Jury Report ........................................................19

Motion in Limine 23:  Testimony and evidence related to the Affidavits of Tammy Harrington....................................................................................20

Motion in Limine 24:  Testimony or evidence related to Oklahoma Medical Board, Oklahoma Bureau of Narcotics, or Oklahoma Nursing Board files subsequent to and unrelated to the care and treatment of Bridget Revilla ............................21

Motion in Limine 25:  Testimony or evidence regarding Dr. Washburn's prior bankruptcy.........22

Motion in Limine 26:  Motions in Limine filed by Defendant Stanley Glanz ..............................22

## TABLE OF AUTHORITIES

<u>CASES</u>

*Baldridge v. Shapiro*
        455 U.S. 345, 361 (1982) ....................................................................6, 8, 9, 18

*Dunn ex rel. Albery v. State Farm Mut. Auto. Ins. Co.*,
        264 F.R.D. 266, 271 (2009) ........................................................................4

*Johnson v. Weld Cty.*,
        594 F.3d 1202, 1210 (10th Cir. 2010) ......................................................22

*Madrigal, et al. v. Mendoza, et. al.,*
        639 F.Supp.2d 1026. ...................................................................................3

*Paddack v. Dave Christensen, Inc.*,

745 F.2d 1254, 1255, 1257 (1984) ................................................................................7

*Robbins v. Oklahoma*,
    519 F.3d 1242, 1250 (10th Cir. 2008) ..............................................................14

*Stone v. Albert*,
    338 Fed.Appx. 757, 759 (2009) ........................................................................14

<u>RULES</u>

FED. R. EVID. 401 ...............................................................1, 2 4, 7, 9, 15, 18, 24

FED. R. EVID. 401(b) ...................................................................3, 17, 21, 22

FED. R. EVID. 402 ..................................................1, 2, 4, 6, 7, 9, 11, 15, 17, 18, 23, 24

FED. R. EVID. 403 ..............................1, 2, 3, 4, 5, 10, 11, 13, 14, 15, 17, 21, 22, 23, 24

FED. R. EVID. 404 ...................................................................3, 17, 21

FED. R. EVID. 404(b) ...................................................................2, 10, 16

FED. R. EVID. 408 ...................................................................16

FED. R. EVID. 602 ...................................................................4, 6, 11, 23

FED. R. EVID. 609 ...................................................................21

FED. R. EVID. 702 ...................................................................3, 14

FED. R. EVID. 801 ...................................................................11, 22

FED. R. EVID. 802 ...................................................................5, 11, 13, 22

FED. R. EVID. 803 ...................................................................4, 6, 7, 11, 13, 23

FED. R. EVID. 804 ...................................................................4, 6, 11, 13, 23

FED. R. EVID. 805 ...................................................................3, 6, 11, 13, 23

FED. R. EVID. 806 ...................................................................3, 6, 11, 13, 23

FED. R. EVID. 807 ...................................................................3, 6, 11, 13, 23

<u>STATUTES</u>

45 C.F.R.§164.512(e)(1) ................................................................................................. 5, 7, 9, 18

45 C.F.R.§164.512(e)(1)(ii)(B) ...................................................................................... 5, 7, 9, 18

63 Okla. Stat. § 1-1709 ..................................................................................................... 8

63 Okla. Stat. § 1-1709.1 .................................................................................................. 8

COME NOW Defendants, Correctional Healthcare Companies, Inc., Andrew Adusei, M.D., Phillip Washburn, M.D., and Christina Rogers, RN (hereinafter "Defendants" or "CHC Defendants"), and respectfully ask this Court for an Order instructing Plaintiff, Plaintiff's counsel, Plaintiff's witnesses, or any other party from introducing evidence, making argument, mentioning, referring to, or attempting to otherwise convey to the jury in any manner, directly or indirectly, actually or implicitly any of the following statements or information:

1. **CHC or jail policies and procedures**

These Defendants urge this Court to enter an Order prohibiting any witness, party or attorney from stating in front of the jury that a CHC or jail policy or procedure was somehow negligently or deliberately violated, or that any such violation caused any injury to Ms. Revilla. Specifically, these Defendants would advise this Court that none of Plaintiff's experts have testified that any employee of CHC violated any such policy or procedure. Indeed, no expert disclosure and no expert witness testimony bears out that a CHC or jail policy and procedure was somehow violated or that any such violation caused any injury to Plaintiff. Therefore, any reference to that or any inference that a CHC or jail policy and procedure is at issue in this case would be improper. It is not relevant, it would be more prejudicial than probative, and it is unsupportive by expert opinion. Fed. R. Evid. 401, 402 and 403. Therefore, Defendant respectfully urges this Court to enter an order prohibiting any statements to the contrary.

2. **Testimony with regard to a code of silence**

Plaintiff, Plaintiff's witnesses and Plaintiff's counsel must be prohibited from making any reference to any alleged conspiracy/code of silence among healthcare providers, law enforcement officers, correctional officers, or healthcare providers. Any such claim is wholly irrelevant and

1

would cause severe prejudice to the Defendants. Fed. R. Evid. 401-403. Further, there has been no testimony or evidence to support any such claim by the Plaintiff's witnesses or experts. Accordingly, Plaintiff has not offered any witnesses with personal knowledge of such actions. As such, these Defendants respectfully move this Court for an order prohibiting such testimony.

### 3. Unrelated or other cases against these Defendants

It would be a violation of the Federal Rules of Evidence to put evidence of other lawsuits and other conduct of any of the Defendants into this case. Fed. R. Evid. 404(b). In this case, the Plaintiff's attorneys have repeatedly attempted to inject information from other irrelevant lawsuits or claims by inmates or employees from the Tulsa County Jail. For example, Plaintiff's counsel has spent a substantial amount in time during witness depositions, including expert witness depositions, questioning the deponents about facts related to the case of Elliott Williams. Including playing video recordings from the Elliott Williams case. Additionally, this Court combined the cases of Lisa Salgado, Gwendolyn Young, Lisa Salgado, and Gregory Brown for the purposes of discovery, but such cases were severed for the purposes of trial. Although discovery was completed together for these four cases, this Court ruled that each of the plaintiffs' respective cases would be tried separately, effectively providing the defendants with a fair and just trial for each case.

Accordingly, Defendants urge this Court for a ruling prohibiting Plaintiff from forcing Defendants to defend against the other unrelated litigation at this trial, as this would constitute trial by ambush. Allowing Plaintiff, Plaintiff's counsel, or Plaintiff's witnesses to introduce evidence of other litigation (including but not limited to separate, unrelated cases filed against these defendants, such as the cases of Elliott Williams, Gwendolyn Young, Gregory Brown, Lisa Salgado, Michael Morittz, Charles Jernegan, and Charles Ray) would distract the jury from the

issues at hand, would confuse the jury as to what the claims are in this action, and would effectively allow Plaintiff's counsel to put forth evidence from their highly publicized and high profile unrelated litigation, in an improper attempt to sway and inflame the jury in the instant action against the defendants.

Such evidence and information of unrelated claims and lawsuits has no bearing on the disputed issues in this case. Fed. R. Evid. 401(b). Additionally, it would be more prejudicial than probative to allow this testimony to be entered into evidence. Fed. R. Evid. 403. Further, pursuant to Fed. R. Evid. 404, evidence used to show conformity with a particular behavior trait is inadmissible. Therefore, the only purpose for attempting to introduce evidence of other lawsuits or claims against any Defendant is to inflame the jury on issues which are not related or probative to matters in this case. Defendant respectfully urges this Court to enter an order prohibiting the use of any such evidence.

### 4. References to improper standards of care and/or causation

Any reference to standards such as "possibilities" or "it might have been" for causation or standards of care would be clearly incorrect statements of the law and could unfairly confuse the jury. Instead, if Plaintiff intends to refer to standards, she and her attorneys and witnesses should be required to reference proper standards such as "reasonable degree of medical certainty" or "reasonable medical certainty". Fed. R. Evid. 702 (2010). *See Madrigal, et al. v. Mendoza, et. al.*, 639 F.Supp.2d 1026.

### 5. NCCHC, ICE, DOJ, ACA, CRCL, ODHS and FBI audits or reports

Plaintiff has listed and intends to use audits, reports, correspondence, and action plans to and from the National Commission of Correctional Health Care (NCCHC), the Immigration and Customs Enforcement agency, the Department of Justice, the American Correctional Association,

Department of Civil Rights and Civil Liberties, the Oklahoma Department of Health and the Federal Bureau of Investigation as evidence of negligence and/or deliberate indifference on the part of the Defendants. The Plaintiff throughout the course of discovery has questioned witnesses on portions of these audits, reports, correspondence, and action plans. None of these reports or audits were undertaken or generated as a result of Plaintiff's care and treatment. Further, there is no information regarding Bridget Revilla which is contained in these audits or reports. Accordingly, such reports are irrelevant. Fed. R. Evid. 401-403. The Court in *Dunn ex rel. Albery v. State Farm Mut. Auto. Ins. Co.*, 264 F.R.D. 266, 271 (2009), held that if a particular type of accreditation (such as NCCHC accreditation) is not required by the state for licensure and is over and beyond such licensing requirements, it is irrelevant to any claims of negligence and is therefore inadmissible. *Id.*

Many of these reports are based on a survey of the medical records of multiple inmates that were incarcerated at the times of the survey. There is no evidence that any of the surveys or reports took into account the care Plaintiff received while incarcerated at the Tulsa County Jail. Moreover, many of the audits and reports Plaintiff's counsel has attempted to use during discovery occurred years before and after Ms. Revilla's care and have nothing to do with her care while at the jail. Accordingly, none of these audits, surveys, or reports contain any first-hand knowledge of the particular inmate cases that were reviewed. As such, the lack of personal knowledge is fatal to any attempt by Plaintiff to offer any such evidence or testimony. Fed. R. Evid. 602. Further, these audits and reports are full of hearsay and hearsay within hearsay and therefore should be inadmissible. The hearsay contained within these audits and reports are not part of any exception under the hearsay rules. Fed R. Evid 803-807. These audits and reports never resulted in a final judgment from a court of law. Given the permissive nature and wide

4

scope of such audits and reports, and the fact that they are wholly unrelated to the issues of this trial, the Court should exclude reference to any of these audits or reports as they do not prove a fact of consequence to this case. Further, these audits and reports never resulted in any of these Defendants being sanctioned or losing accreditation.

If the jury hears words such as "investigation" or "deficiency", it will undoubtedly cause unfair prejudice to these Defendants. Fed. R. Evid. 403. Use of any NCCHC, ICE, DOJ, CRCL, ODHS, or FBI audit or report will only serve to confuse and mislead the jury while prejudicing the Defendants. Since these audits and reports have no probative value, the Court should exclude any reference to such under Fed R. Evid 802.

It should also be noted that these audits and reports may contain the protected health information of inmates that are not a party to this case. Plaintiff's attempt to disclose this information in a public trial would amount to the protected health information of these individuals being revealed to the public without any notice or waiver by the particular individual. Such a request should be denied by the Court as a violation of HIPAA and Congress' intent to protect its citizens' personal medical information. The Health Insurance Portability and Accountability Act ("HIPAA") protects confidential patient health information and the U.S. Department of Health and Human Services sets forth specific guidelines for obtaining said information for purposes of litigation..

When a party files an action for medical negligence, or when their own health is at issue, he or she waives any right to confidentiality with respect to his or her medical records; however, such is not the case for non-parties. *Id.* A party may not obtain the medical records of a non-party unless the non-party gives consent or the court orders the disclosure. 45 C.F.R. §164.512(e)(1). Through the implementation of HIPAA, Congress clearly intended for citizen's medical

information to remain confidential, and to disregard such would be undermining Congress' goal and authority. (*See Baldridge v. Shapiro*, 455 U.S. 345, 361 (1982) reasoning that "Congress intended the confidentiality provisions [of a federal statute] to constitute a privilege within the meaning of the Federal Rules[,]" otherwise "[d]isclosure by way of civil discovery would undermine the very purpose of confidentiality contemplated by Congress."). None of the non-parties' information which would be introduced via these audits and reports have given consent for their confidential medical records to be released. As such, any attempt by the Plaintiff to introduce audits, reports, correspondence, and action plans to and from the NCCHC, ICE, DOJ, or the FBI containing protected health information of non-parties should be disallowed pursuant to HIPAA.

6. **Documents, review, AMS reports and testimony of Dr. Howard Roemer**

Plaintiff has also listed and intends to use documents, review information, and testimony of Dr. Howard Roemer regarding his involvement in a contract compliance audit. Ms. Revilla's care was not reviewed by Dr. Roemer as part of his review. Accordingly, these documents and reviews have absolutely nothing to do with Ms. Revilla or her care and, more importantly, the issues in this case. Fed R. Evid. 402. Dr. Roemer has no has no personal knowledge of the care provided to any of the inmate files which he reviewed, much less Ms. Revilla's care. As such, this information is again inadmissible. Fed. R. Evid. 602.

Further, the reports, documents, and correspondence created by Dr. Roemer, as well as his prior testimony in unrelated litigation, is full of hearsay and hearsay within hearsay and thus should be inadmissible. Further, the hearsay contained within any of his documents, reports, or correspondence are not part of any exception under the hearsay rules. Fed R. Evid 803-807. More specifically, his review was not a regularly conducted event that would allow such to be

categorized as an event which takes place in the ordinary course of business or the records of such to be a business record allowing the Hearsay Exception outlined in Fed. R. Evid. 803. *See Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1257 (1984). This Court in *Paddack* held that "audit reports are based in part on inadmissible hearsay". *Id* at 1255. In so ruling, the court explained that audit reports are not admissible into evidence due to the "inadmissibility of the audit reports to prove the truth of that which appears therein. *Id.*

Dr. Roemer's review, reports, correspondence, and testimony never resulted in a final judgment from a court of law. Given the permissive nature and wide scope of such audits and reports, and the fact that they are wholly unrelated to the issues of this trial, the Court should exclude reference to any of these audits, reports, review or correspondence as they do not prove a fact of consequence to this case. Further, this documentation and testimony of Dr. Roemer never resulted in any of these Defendants being sanctioned or losing accreditation. Accordingly, these documents should be inadmissible pursuant to Fed. R. Evid. 401 and 402.

It should also be noted that much of the documentation and testimony related to Dr. Roemer may contain protected health information of inmates that are not a party to this case. Plaintiff's attempt to disclose this information in a public trial would amount to the protected health information of these individuals being revealed to the public without any notice or waiver by the particular individual. Such a request should be denied by the Court as a violation of HIPAA and Congress' intent to protect its citizens' personal medical information. The Health Insurance Portability and Accountability Act ("HIPAA") protects confidential patient health information and the U.S. Department of Health and Human Services sets forth specific guidelines for obtaining said information for purposes of litigation. *See* 45 C.F.R.§164.512(e)(1)(ii)(B). When a party files an action for medical negligence, or when their

own health is at issue, he or she waives any right to confidentiality with respect to his or her medical records; however, such is not the case for non-parties. *Id.* A party may not obtain the medical records of a non-party unless the non-party gives consent or the court orders the disclosure. 45 C.F.R. §164.512(e)(1). Through the implementation of HIPAA, Congress clearly intended for citizen's medical information to remain confidential, and to disregard such would be undermining Congress' goal and authority. (*See Baldridge v. Shapiro*, 455 U.S. 345, 361 (1982) reasoning that "Congress intended the confidentiality provisions [of a federal statute] to constitute a privilege within the meaning of the Federal Rules[,]" otherwise "[d]isclosure by way of civil discovery would undermine the very purpose of confidentiality contemplated by Congress."). None of the non-parties' information which would be introduced via these audits and reports have given consent for their confidential medical records to be released. As such, any attempt by the Plaintiff to introduce the audit, documentation from or testimony of Dr. Roemer containing protected health information of non-parties should be disallowed pursuant to HIPAA.

### 7. <u>Internal Reviews and Mortality Reviews</u>

Plaintiff has listed as an exhibit in this case and asserted that she intends to present mortality reviews completed by CHC in response to the deaths of non-party inmates. On their face, these mortality reviews do not have any relevance to Ms. Revilla's care. These mortality reviews were done after Ms. Revilla's care and were done for the purpose of reducing morbidity and mortality in the jail infirmary. Likewise, internal investigations done in anticipation of litigation or for the purpose of decreasing morbidity and mortality rates at the jail are privileged under Oklahoma law and are irrelevant to this case. 63 Okla. Stat. §§ 1-1709 and 1-1709.1. As such, they are inadmissible pursuant to Fed. R. Evid. 401 and 402.

Further, the mortality reviews of inmates other than Ms. Revilla contain protected health

information of inmates that are not a party to this case.  Plaintiff's attempt to disclose this information in a public trial would amount to the protected health information of these individuals being revealed to the public without any notice or waiver by the particular individual. Such a request should be denied by the Court as a violation of HIPAA and Congress' intent to protect its citizens' personal medical information.The Health Insurance Portability and Accountability Act ("HIPAA") protects confidential patient health information and the U.S. Department of Health and Human Services sets forth specific guidelines for obtaining said information for purposes of litigation. 45 C.F.R.§164.512(e)(1)(ii)(B). When a party files an action for medical negligence, or when their own health is at issue, he or she waives any right to confidentiality with respect to his or her medical records; however, such is not the case for non-parties. *Id.* A party may not obtain the medical records of a non-party unless the non-party gives consent or the court orders the disclosure. 45 C.F.R. §164.512(e)(1). Through the implementation of HIPAA, Congress clearly intended for citizen's medical information to remain confidential, and to disregard such would be undermining Congress' goal and authority. (*See Baldridge v. Shapiro*, 455 U.S. 345, 361 (1982) reasoning that "Congress intended the confidentiality provisions [of a federal statute] to constitute a privilege within the meaning of the Federal Rules[,]" otherwise "[d]isclosure by way of civil discovery would undermine the very purpose of confidentiality contemplated by Congress."). None of the non-parties' information which would be introduced via these audits and reports have given consent for their confidential medical records to be released.

**8. Testimony or evidence regarding these Defendants no longer providing care at Tulsa County Jail**

It would be a violation of the Federal Rules of Evidence to put evidence of CHC no

9

longer being contracted to provide medical care at the jail. Fed. R. Evid. 404(b). In this case, the Plaintiff's attorneys have repeatedly attempted to inject information regarding the decision of the Tulsa County BOCC's decision to contract with a different healthcare provider. Such evidence and information of unrelated contract negotiations and status between the Tulsa County Sheriff and CHC have no bearing on the disputed issues in this case. Fed. R. Evid. 401(b). Further, the Plaintiff has no evidence to support statements that the reason the BOCC chose a different healthcare provider was the level of care being provided by CHC. Therefore, such statements by Plaintiff, Plaintiff's attorneys or Plaintiff's witnesses to that effect would be inadmissible speculation. Additionally, it would be more prejudicial than probative to allow this testimony to be entered into evidence. Fed. R. Evid. 403. Defendant respectfully urges this Court to enter an order prohibiting the use of any such evidence.

**9.   Testimony regarding rumors or information the individual has heard**

Plaintiff's counsel has asked a number of witnesses about information that they heard at the jail or about rumors that were discussed at the jail. In particular, Plaintiff's counsel in this case has attempted to elicit information from witnesses that the defendants have engaged in falsifying and destroying records. The witnesses that Plaintiff's counsel has attempted to elicit this information from are all disgruntled ex-employees of the defendants. Plaintiff's key witness regarding these allegations, Tammy Harrington, is a disgruntled former employee who was terminated from CHC. Ms. Harrington testified that she never specifically saw any employees of CHC falsify medical records, and that the only "knowledge" she has related to any such alleged falsification of records is from hearsay. In fact, *all* of the testimony the Plaintiff elicited was utter hearsay and rumors, and Plaintiff did not depose a single witness related to the care of Ms. Revilla. The unanimous testimony of unrelated witnesses was that no such records falsification

or alteration occurred at any period in time. As such, Plaintiff's evidence of hearsay and rumors is not only improper but is not supported by any of the admissible evidence.

This hearsay evidence is clearly improper pursuant to the Federal Rules of Evidence. By the very definition of "rumor", these witnesses have admitted that they do not have personal knowledge regarding this information. Fed. R. Evid. 602. Further, this testimony would clearly be hearsay pursuant to Fed. R. Evid. 801 and 802 and would not fall under any of the Hearsay exceptions under Fed. R. Evid. 803-807. Additionally, any rumor that Plaintiff's witnesses could testify to would be irrelevant pursuant to Fed. R. Evid. 402. Further, this information would be prejudicial to these Defendants because the defendants would have no way of testing this testimony for its veracity.  Fed. R. Evid. 403. Accordingly, these Defendants request that this Court issue an order forbidding any such testimony.

### 10. Employment records of CHC healthcare providers

It is anticipated that Plaintiff may attempt to introduce evidence or documents from the employment files of the CHC nurses.  Under Fed. R. Evid. 402, "Irrelevant evidence is not admissible."  Furthermore, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of ***unfair prejudice***, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise.  Fed. R. Evid. 403. Evidence or records contained within the CHC healthcare provider's personnel files which is hearsay or which occurred after Ms. Revilla's care is irrelevant to this suit and should not be admissible. None of the documentation contained in any of these employment files contains information related to Ms. Revilla or the care provided to her and, thus, has nothing to do with the care provided in this case. Accordingly, any such evidence should be excluded.

11. **Criticisms not presented by expert testimony**

Plaintiff or Plaintiff's counsel should not be allowed to advance criticisms and claims that were not advanced by expert testimony. Notably, Plaintiff did not disclose *any* experts in support of her action. It would be error to permit Plaintiff, her counsel or Plaintiff's witnesses to raise issues or to give lay opinions on any medical, nursing, or mental health issue, such as a description of the exact injury, standards of care, causation of the injury, and medical or nursing diagnosis, etc. Clearly, such testimony must come from a qualified expert witness and be based upon a reasonable degree of medical certainty. Moreover, Defendant seeks a ruling in limine precluding the severed Plaintiffs' (i.e., in the cases of Gregory Brown, Lisa Salgado, and Gwendolyn Young) expert witnesses from testifying at this trial. The severed Plaintiffs' expert witnesses have been deposed. None of the severed Plaintiffs' expert witnesses have offered any opinions related to Ms. Revilla. Any new opinions would be fundamentally unfair to the Defendant at this stage of litigation and would clearly constitute trial by ambush.

12. **Testimony regarding lack or weakness of staffing**

It is anticipated that Plaintiff will unfoundedly attempt to make representations to the jury that the staffing at Tulsa County Jail by CHC was lacking, weak or improperly trained. Plaintiff has failed to come forward with any evidence throughout the course of discovery to support these claims. As a result, any such a claim is completely unfounded and there is a total lack of evidence that such is true. It is fundamental that allegations of negligence must be supported by sufficient evidence. To date, there has been no evidence whatsoever to indicate or remotely imply that any of these allegations are true. If there is not competent evidence to support the result reached by the trier of fact it is vulnerable to being overturned on appeal. It is not enough for Plaintiff to have a theory regarding these allegations. Plaintiff must have some factual evidence to support

for such a theory if it is to be introduced to the jury. Any such claim by Plaintiff would be mere speculation and completely unfounded. As such, the Court should prohibit the discussion of any of these allegations.

13. **Investigation reports from the Tulsa County Sheriff's Department or OSBI**

Plaintiff has listed and intends to use reports and investigation documents, including statements from guards and CHC employees and summaries of such, from the Tulsa County Sheriff's Department and OSBI as evidence of negligence and/or deliberate indifference on the part of the Defendants. The Plaintiff throughout the course of discovery has questioned witnesses on portions of these reports and statements.

These reports and statements are full of hearsay and hearsay within hearsay and thus should be inadmissible, and the hearsay contained within these audits and reports are not part of any exception under the hearsay rules, Fed. R. Evid 803-807. These reports and statements were not made under oath and never resulted in a final judgment from a court of law. Given the permissive nature and wide scope of such reports, and the fact that they are wholly unrelated to the issues of this trial, the Court should exclude reference to any of these audits or reports as they do not prove a fact of consequence to this case. Further, these reports and statements are portions of police records. Police records are specifically excluded from the exceptions to hearsay and thus are inadmissible. Fed R. Evid. 803-807.

If the jury hears words such as "investigation" or "criminal" it will undoubtedly cause unfair prejudice to these Defendants. Fed. R. Evid. 403. Use of the Tulsa County Sheriff or OSBI reports and statements will only serve to confuse and mislead the jury while prejudicing the Defendants. Since these reports have no probative value, the Court should exclude any reference to such under Fed R. Evid 802.

**14. <u>Testimony or evidence of negligence or indifference of healthcare providers not specifically named in this lawsuit</u>**

Plaintiff or Plaintiff's counsel should not be allowed to advance criticisms and claims that against care providers that have not been named in this lawsuit. Allowing testimony or evidence of negligence or indifference of non-party care providers would only serve to confuse and mislead the jury while prejudicing the Defendants. Fed. R. Evid. 403. Further, any criticisms regarding these non-party care providers would be required to be supported by expert testimony. Fed. R. Evid. 702. Most significantly, Plaintiff did not disclose experts and, therefore, Plaintiff has no expert criticisms in this matter.

Established law requires that Plaintiff name individuals who are alleged to have wronged the Plaintiff through indifference. "To state a claim, a complaint must "make clear exactly who is alledged to have done *what to whom." Stone v. Albert*, 338 Fed.Appx. 757, 759 (2009)(quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). "'Collective allegations against the state' are not sufficient in a §1983 claim; a plaintiff must identify who exactly injured him **and then join that party as a defendant.**" *Id.* Plaintiff has had ample opportunity to add Defendants and has amended the Complaint in this matter a number of times. However, Plaintiff has failed to name additional employees or agents of the Defendants as parties to this action. The law does not allow Plaintiff to make blanket allegations of negligence or indifference to establish corporate or personal liability. Plaintiff should not be allowed to discuss negligence or indifference on the part of any non-party as such would be irrelevant and prejudicial. Accordingly, this court should disallow evidence or testimony regarding such.

**15. <u>Testimony or evidence of negligence or indifference of healthcare providers not specifically testified to by endorsed experts</u>**

Plaintiff or Plaintiff's counsel should not be allowed to advance criticisms and claims that were not advanced by expert testimony. Notably, Plaintiff did not disclose experts in this matter, and the deadline to do so has long passed. It would be error to permit Plaintiff, her counsel or Plaintiff's witnesses to raise issues or to give lay opinions on any medical, nursing, or mental health issue, including specific claims of negligence or indifference on the part of particular nurses or other healthcare providers which were not addressed by expert witnesses endorsed by the Plaintiff in accordance with the Scheduling Order.

Clearly, such testimony must come from a qualified expert witness and be based upon a reasonable degree of medical certainty. Accordingly, Plaintiff should not be allowed to advance new criticisms regarding specific care providers which have not already been specifically addressed by Plaintiff prior to this late stage in litigation.  To do so would be fundamentally unfair and prejudicial.

**16. <u>References to Defendants, or employees of Defendants, by derogatory terms</u>**

On multiple occasions during the litigation of this matter, Plaintiff's counsel has referred to the Defendants and Defendants' employees using derogatory and unprofessional terms. Plaintiff, Plaintiff's witnesses and Plaintiff's counsel must be prohibited from making any reference or using any derogatory language in reference to the Defendants or Defendants' employees. Any such reference is wholly irrelevant and would cause severe prejudice to the Defendants. Fed. R. Evid. 401-403. As such, these Defendants respectfully move this Court for an order prohibiting such testimony.

17. <u>**Reference to fraud or destruction of records by healthcare providers**</u>

It is anticipated that Plaintiff will unfoundedly attempt to make representations to the jury that the healthcare providers attempted to fraudulently manipulate or create medical records or other medical paperwork. Plaintiff may also attempt to suggest that medical records were improperly destroyed in an attempt to hide information. Plaintiff has failed to come forward with any evidence throughout the course of discovery to support these claims. To the contrary, the testimony from the defendants has been unanimous that no healthcare provider in the jail falsified records. As a result, any such a claim is completely unfounded and there is a total lack of evidence that such is true. It is fundamental that allegations of negligence must be supported by sufficient evidence. To date, there has been no evidence whatsoever to indicate or remotely imply that any of these allegations are true. If there is not competent evidence to support the result reached by the trier of fact it is vulnerable to being overturned on appeal. It is not enough for Plaintiff to have a theory regarding these allegations. Plaintiff must have some factual evidence to support for such a theory if it is to be introduced to the jury. Any such claim by Plaintiff would be mere speculation and completely unfounded. As such, the Court should prohibit the discussion of any of these allegations.

18. <u>**Testimony or evidence regarding settlement or verdicts in other cases**</u>

Any reference to any offers of settlement or compromise between all parties regarding any case must be prohibited. Any reference would be an improper attempt to prove liability or the amount of a claim. Fed. R. Evid. 408. Further, it would be a violation of the Federal Rules of Evidence to put evidence of other lawsuits and other conduct of any of the Defendants into this case. Fed. R. Evid. 404(b). It is anticipated that the Plaintiff's attorneys may attempt to poison the jury against these Defendants by attempting to discuss other verdicts, settlements or settlement

16

negotiations involving these Defendants in other cases. Such evidence and information of unrelated claims and lawsuits has no bearing on the disputed issues in this case. Fed. R. Evid. 401(b). Additionally, it would be more prejudicial than probative to allow this testimony to be entered into evidence. Fed. R. Evid. 403. Further, pursuant to Fed. R. Evid. 404, evidence used to show conformity with a particular behavior trait is inadmissible. Therefore, the only purpose for attempting to introduce evidence of other lawsuits or claims against any Defendant is to inflame the jury on issues which are not related or probative to matters in this case. Defendant respectfully urges this Court to enter an order prohibiting the use of any such evidence.

19. **Testimony regarding proposed use of settlement or verdict funds**

It is anticipated that Plaintiff may attempt to introduce testimony with regard to what the relatives of Ms. Revilla intends to do with any settlement or judgment funds received (i.e. starting a church, starting a ministry, or starting a charitable foundation). Under Fed. R. Evid. 402, "Irrelevant evidence is not admissible." Furthermore, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of ***unfair prejudice***, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise. Fed. R. Evid. 403. This information has nothing to do with the claims that have been made in this case are irrelevant in this matter. Accordingly, any such evidence should be excluded.

20. **Medical records or testimony regarding patients other than Ms. Revilla**

Plaintiff has listed as an exhibit in this case and asserted that she intends to present medical records of a number of non-party inmates. On face, these medical records do not have any relevance to Ms. Revilla's care. As such, such should be inadmissible pursuant to Fed. R. Evid. 401 and 402.

Further, the medical records of inmates other than Ms. Revilla contain protected health information of inmates that are not a party to this case. Plaintiff's attempt to disclose this information in a public trial would amount to the protected health information of these individuals being revealed to the public without any notice or waiver by the particular individual. Such a request should be denied by the Court as a violation of HIPAA and Congress' intent to protect its citizens' personal medical information. The Health Insurance Portability and Accountability Act ("HIPAA") protects confidential patient health information and the U.S. Department of Health and Human Services sets forth specific guidelines for obtaining said information for purposes of litigation. 45 C.F.R.§164.512(e)(1)(ii)(B). When a party files an action for medical negligence, or when their own health is at issue, he or she waives any right to confidentiality with respect to his or her medical records; however, such is not the case for non-parties. *Id.* A party may not obtain the medical records of a non-party unless the non-party gives consent or the court orders the disclosure. 45 C.F.R. §164.512(e)(1). Through the implementation of HIPAA, Congress clearly intended for citizen's medical information to remain confidential, and to disregard such would be undermining Congress' goal and authority. (*See Baldridge v. Shapiro*, 455 U.S. 345, 361 (1982) reasoning that "Congress intended the confidentiality provisions [of a federal statute] to constitute a privilege within the meaning of the Federal Rules[,]" otherwise "[d]isclosure by way of civil discovery would undermine the very purpose of confidentiality contemplated by Congress."). None of the non-parties' information which would be introduced via these medical records have given consent for their confidential medical records to be released.

21. **Testimony and evidence regarding a lack of funding or insufficient budget**

It is anticipated that Plaintiff will unfoundedly attempt to make representations to the jury

that the funding and budget of CHC at Tulsa County Jail by CHC was lacking, weak or insufficient. Plaintiff has failed to come forward with any evidence throughout the course of discovery to support these claims. As a result, any such a claim is completely unfounded and there is a total lack of evidence that such is true. It is fundamental that allegations of negligence must be supported by sufficient evidence. To date, there has been no evidence whatsoever to indicate or remotely imply that any of these allegations are true. If there is not competent evidence to support the result reached by the trier of fact it is vulnerable to being overturned on appeal. It is not enough for Plaintiff to have a theory regarding these allegations. Plaintiff must have some factual evidence to support for such a theory if it is to be introduced to the jury. Any such claim by Plaintiff would be mere speculation and completely unfounded. As such, the Court should prohibit the discussion of any of these allegations.

22. **Testimony and evidence regarding Stanley Glanz's misdemeanor and the Grand Jury Report.**

It is anticipated that Plaintiff's counsel will attempt to introduce evidence of former Sheriff Stanley Glanz's plea bargain, sentence, and evidence related to the Grand Jury Investigation into former Sheriff Glanz and the jail and his subsequent indictment. Plaintiff's counsel has asked a number of witnesses questions related to former Sheriff Glanz's indictment, and Defendants are concerned that Plaintiff's counsel will attempt to introduce such evidence in an effort to improperly inflame the jury against the defendants. Such investigation, indictment, and plea bargain have no relationship or bearing whatsoever on any of the issues in this case.

Former Sheriff Glanz pled guilty to a misdemeanor charge for willful violation of the law (specifically, for using county vehicles for official business while receiving a monthly stipend for use of his personal vehicle) and a plea of no contest to a misdemeanor charge of refusal to

perform official duty (specifically, failing to turn over a report on the 2009 internal investigation into former Reserve Deputy Robert Bates). None of the allegations in this case involve the use of Sheriff Glanz's personal vehicle versus county vehicles. Moreover, this action does not have any relationship to Robert Bates, his qualifications, his employment with the Tulsa County Sheriff's Office, or his unrelated litigation. Such evidence has no relevance to the disputed issues in the instant action. Fed. R. Evid. 401(b). Additionally, it would be more prejudicial than probative to allow this testimony to be entered into evidence. Fed. R. Evid. 403. Further, pursuant to Fed. R. Evid. 404, evidence used to show conformity with a particular behavior trait is inadmissible. Therefore, the only purpose for attempting to introduce evidence of former Sheriff Glanz's Grand Jury investigation, indictment, plea bargain and sentence is to inflame the jury on issues which are not related or probative to matters in this case. Furthermore, such criminal convictions are inadmissible as evidence at trial. Fed. R. Evid. 609. There is absolutely no probative value of his convictions which would substantially outweigh their prejudicial effect. Defendants therefore respectfully urge this Court to enter an order prohibiting the use of any such evidence.

23. **Testimony and evidence related to the Affidavits of Tammy Harrington**

Defendants are concerned that Plaintiff's counsel will attempt to introduce into evidence at trial, as an exhibit or by eliciting answers from witnesses, the affidavit of Tammy Harrington. Affidavits are usually inadmissible at trial as hearsay. Fed. R. Evid. 801, 802. See also *e.g., Johnson v. Weld Cty.*, 594 F.3d 1202, 1210 (10th Cir. 2010)("An affidavit [is] a form of evidence that is usually inadmissible at trial given our adversarial system's preference for live testimony."). In this action, Ms. Harrington has been deposed. She testified that she signed the subject affidavit, which she testified was written by Plaintiff's counsel. From an evidentiary standpoint, her affidavit is replete with inadmissible hearsay, conclusory statements, and

purported expert opinions. Ms. Harrington has been deposed multiple times with regard to the affidavit at issue, in the instant litigation and in prior litigation. In such testimony, she contradicted portions of her affidavit and specifically testified that she is not offering expert opinions in this matter. However, despite Ms. Harrington having provided testimony explaining the statements contained within the affidavit, Plaintiff's counsel provided Ms. Harrington's affidavit to her experts but did not provide them with her deposition testimonies. Defendants are therefore concerned that Plaintiff's counsel plans to improperly admit Ms. Harrington's affidavit into evidence at trial, either through the testimony of her witnesses or as an exhibit itself.

This hearsay evidence is improper pursuant to the Federal Rules of Evidence. Throughout her deposition testimony, Ms. Harrington admitted that she does not have personal knowledge regarding much of the information contained within her affidavit. Fed. R. Evid. 602. Her affidavit is hearsay and does not fall under any of the Hearsay exceptions under Fed. R. Evid. 803-807. Furthermore, her affidavit contains numerous statements related to other non-party inmates and witnesses which are irrelevant pursuant to Fed. R. Evid. 402. Further, this information would be prejudicial to these Defendants because the defendants would have no way of testing this testimony for its veracity.   Fed. R. Evid. 403. Accordingly, these Defendants request that this Court issue an order forbidding the introduction of Ms. Harrington's affidavit and the statements contained therein at trial, either as an exhibit or in testimony, with the exception of the testimony of Ms. Harrington herself.

24. **Testimony or evidence related to Oklahoma Medical Board, Oklahoma Bureau of Narcotics, or Oklahoma Nursing Board files subsequent to and unrelated to the care and treatment of Bridget Revilla**

Plaintiff, Plaintiff's witnesses and Plaintiff's counsel must be prohibited from making any reference to or introducing into evidence any portion of Dr. Adusei's Oklahoma Medical

Board file or Oklahoma Bureau of Narcotics file, or Defendants' employed nurses' Oklahoma Nursing Board files which were generated subsequent to the care and treatment provided to Ms. Revilla and are unrelated to the care and treatment provided to Ms. Revilla. Any such evidence is irrelevant to the instant action. The introduction of any such evidence would be improper, would confuse the issues and mislead the jury, and would severely and unfairly prejudice the Defendant. Fed. R. Evid. 401-403. As such, Defendants move this Court for an order prohibiting the introduction of any such evidence at trial.

**25. <u>Testimony or evidence regarding Dr. Washburn's prior bankruptcy</u>**

Defendants are concerned that Plaintiff or Plaintiff's counsel may attempt to introduce evidence of Dr. Washburn's prior bankruptcy filing at trial. In 1996, Dr. Washburn filed for bankruptcy in the Western District of Oklahoma. It is not relevant and would be more prejudicial than probative. Fed. R. Evid. 401, 402 and 403. Therefore, Defendant respectfully urges this Court to enter an order prohibiting the introduction of any such evidence at trial.

**26. <u>Motions in Limine filed by Defendant Stanley Glanz</u>**

These Defendants specifically adopt and incorporate any motions in limine filed by Defendant Stanley Glanz. Moreover, as the deadline to exchange lists of exhibits has not yet occurred, these Defendants reserve the right to file additional motions in limine upon the final exchange of exhibits.

Respectfully submitted,


*/s/ Alexandra G. Ah Loy*
ALEXANDER C. VOSLER, OBA #19589
SEAN P. SNIDER, OBA # 22307
ALEXANDRA G. AH LOY, OBA # 31210
JOHNSON HANAN AND VOSLER
9801 N. Broadway Extension
Oklahoma City, OK 73114
Telephone: (405) 232-6100
Facsimile: (405) 232-6105
E-Mail: avosler@johnsonhanan.com
E-Mail: ssnider@johnsonhanan.com
E-Mail: aahloy@johnsonhanan.com
*Attorneys for Defendant, Correctional*
*Healthcare Companies, Inc., Andrew*
*Adusei, M.D., Phillip Washburn, M.D., and*
*Christina Rogers, RN*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on June 7, 2017, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| Daniel E. Smolen | danielsmolen@ssrok.com |
| Donald E. Smolen, II | donaldsmolen@ssrok.com |
| Robert Blakemore | bobblakemore@ssrok.com |
| Daniel B. Graves | dan@gravesmclain.com |
| William C. McLain | chad@gravesmclain.com |
| Rachel E. Gusman | rachel@gravesmclain.com |
| Clark Otto Brewster | cbrewster@brewsterlaw.com |
| Corbin C. Brewster | ccbrewster@brewsterlaw.com |
| Guy Anthony Fortney | gfortney@brewsterlaw.com |
| Katie Suzanne Arnold Wassam | karnold@brewsterlaw.com |
| Lauren G. Lambright | laurenlambright@ssrok.com |
| Dennis A. Caruso | dcaruso@carusolawfirm.com |
| Mark A. Smith | msmith@carusolawfirm.com |
| Douglas A. Wilson | douglas.wilson@tulsacounty.org |
| James N. Edmonds | ecf@ahn-law.com |
| Walter D. Haskins, III | ecf@ahn-law.com |

                                               */s/Alexandra G. Ah Loy*