# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEBORAH YOUNG, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 13-CV-00315-JED-JFJ |
| | ) |
| STANLEY GLANZ, et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Before Court are Non-Party Commissioners' Appeal Of, Or, in the Alternative, Objection to the Magistrate's Orders Allowing Intervention, Substitution and Modification of the Protective Order (ECF No. 227); Commissioners' Motion to Strike (ECF No. 200); and Frontier's Motion to Modify Protective Order (ECF No. 194). All motions were referred by United States District Judge John Dowdell.

## I. Factual Background

Judge Dowdell is presiding over this ongoing litigation, in which Plaintiffs allege they received inadequate medical care at the Tulsa County jail and assert violations of their state and federal constitutional rights. Judge Dowdell has stayed all deadlines pending his resolution of dispositive motions.

Prior to his resignation, United States Magistrate Judge T. Lane Wilson was presiding over a peripheral dispute, in which a member of the local media seeks modification of a Stipulated Protective Order ("SPO"). The media seeks public access to transcripts ("Transcripts") of depositions given by Tulsa County Commissioners John Smaligo, Karen Keith, and Joe Peters ("Commissioners") and Defendant former Tulsa County Sheriff Stanley Glanz ("Glanz"). The

Transcripts dispute has a lengthy procedural history, and the Court sets forth only the procedural history relevant to its ruling.

On May 16, 2014, upon joint motion of the parties, Judge Wilson entered the SPO. The SPO prohibits use of "documents and other materials produced in this litigation" for any purpose other than the litigation, whether or not the materials are designated as confidential. ECF No. 65 ¶ 1(f). It also permits the parties to designate materials as "confidential" or "highly confidential," and specifies procedures for such materials. *Id.* ¶¶ 2-5. During the course of discovery, on June 5, 2015, Plaintiffs subpoenaed non-party Commissioners for depositions. Commissioners moved to quash the subpoenas, arguing that Plaintiffs' counsel intended to ask Commissioners personal questions unrelated to this case. Judge Wilson denied the motion to quash but permitted Commissioners to "take advantage of the provisions of the" SPO. ECF No. 121.

On September 20, 2016, The Frontier ("Frontier"), an online newspaper, filed a Motion to Intervene for the Limited Purpose of Seeking Modification of Protective Order ("Motion to Intervene") (ECF No. 177). As grounds for intervention and modification of the SPO, Frontier argued:

> The lawsuit alleges that members of the Tulsa County Sheriff's Office [], including [Glanz], knew the medical care that was being provided was inadequate but still failed to monitor or exercise control or authority over [Correctional Healthcare Companies, Inc.]. His testimony on these issues should be open to the public so that the public can make informed decisions and offer meaningful input regarding the medical contract process and jail medical standards. County Commissioner Karen Keith is running for re-election this November and her statements regarding the jail medical system, including the large sums of county money she has, during her tenure, approved for jail medical care and the TCSO is an important issue to voters. The statements of Commissioners Peters and Smaligo are equally important even though they are not running for re-election this cycle. These matters of public concern outweigh any expectation of privacy the County Commissioners, Sheriff Glanz, or the TCSO might have. The requested relief is consistent with the openness inherent in the judicial system, as well as the express policies of this Court.

ECF No. 177 at 5-6. The referenced election was scheduled to occur on Tuesday, November 8, 2016. Defendants Glanz and current Sheriff Vic Regalado ("Defendants") filed a response raising several objections, including that Frontier lacked standing to intervene. Commissioners filed a motion for leave to respond to the Motion to Intervene. Judge Dowdell referred Frontier's Motion to Intervene and Commissioners' motion for leave to respond.

On October 25, 2016, Judge Wilson entered an Order that essentially divided the Motion to Intervene into two parts: (1) the Motion to Intervene (ECF No. 177); and (2) a motion to modify the SPO ("Motion to Modify") (docketed as ECF No. 194). *See* ECF No. 196. In the same Order, Judge Wilson granted Frontier's Motion to Intervene, implicitly rejecting Defendants' standing argument. Judge Wilson construed Commissioners' motion for leave to respond as a motion to intervene for the purpose of objecting to modification of the SPO and granted Commissioners intervenor status.

In the October 25, 2016 Order, Judge Wilson ordered the parties and intervening parties to meet and confer on October 30, 2016 in attempt to resolve the Motion to Modify. Judge Wilson granted Frontier's counsel access to the Transcripts for purposes of the meet and confer and ordered the parties to file a joint statement no later than November 1, 2016, informing him of remaining disputes and attaching disputed portions of the Transcripts. Judge Wilson later clarified that this review by Frontier's counsel was an "attorneys' eyes only" review. He also granted Frontier's motion to substitute Lorton Media Group ("LMG") in place of Frontier, over objections by Commissioners and Defendants.

On November 4, 2016, the same day as a scheduled hearing before Judge Wilson on the Motion to Modify, Commissioners filed an Appeal/Objection to the Magistrate's Orders Allowing Intervention, Substitution, and Modification of the Protective Order ("Commissioners' Objection") (ECF No. 227). Commissioners objected to the following orders by Judge Wilson:

3

(1) Order granting Frontier's Motion to Intervene (ECF No. 196); (2) Order granting Frontier's counsel limited access during the meet and confer (ECF No. 196); and (3) Orders permitting substitution of LMG and adding LMG as a party (ECF Nos. 218, 224).

During the November 4, 2016 hearing ("11/4/16 Hearing"), Judge Wilson primarily heard substantive argument on the Motion to Modify. At the conclusion of the hearing, he addressed Commissioners' Objection filed that date, which was then pending before Judge Dowdell:

> [I]t will be Judge Dowdell's decision – I think what will happen is he'll have me address all these issues and then whichever party is unhappy can then appeal my decision. And when I enter either my order or R&R . . . I'll make it clear that it's either an order or it's an R&R. . . . I'm going to give [LMG] a chance to respond and give [Defendants] and [Plaintiffs] a chance to respond and then give you [Commissioners] a reply on what we have pending, and then I can issue either an order or an R&R on that . . . and then Judge Dowdell can consider either the objection if I do an R&R; an appeal; if I do an order. [I]s that procedurally acceptable to everyone here?

11/4/16 Tr. at 58. Counsel for Commissioners responded:

> I think that would be acceptable, Judge, for you to consider the issues as to whether your rulings have been in the form of orders or whether they should be characterized as reports and recommendations. In fact, one of the cases that we cited . . . was a case where the magistrate judge did that.

*Id.* at 59. Judge Wilson stated that, "in the end, Judge Dowdell can take whatever I do . . . I'm going to consolidate it into one order or R&R and he can then decide." *Id.* at 60. Judge Wilson further stated that Commissioners' Objection "will be viewed as an objection," and that he would "issue a consolidated decision . . . at the close of briefing." Judge Wilson set a full briefing schedule in order to permit the parties an opportunity to address "every open issue." *Id.* at 66. He gave Defendants until November 11, 2016 to "weigh in" on Commissioners' Objection, and Defendants' counsel indicated they would adopt Commissioners' Objection to Judge Wilson's prior Orders. *Id.* at 62. Frontier's counsel agreed that, unless Judge Wilson planned to rule on the Motion to Modify before the November 8, 2016 election, there was no urgency to deciding the

4

Motion to Modify. Two days after this hearing, on November 6, 2016, Judge Dowdell referred Commissioners' Objection (ECF No. 256).

On November 11, 2016, in accordance with Judge Wilson's briefing schedule, Defendants filed Glanz and Regalado's Adoption of Non-Party Commissioners' Appeal of, or in the Alternative, Objection to Magistrate's Orders Allowing Intervention, Substitution, and Modification of Protective Order ("Defendants' Adoption") (ECF No. 236). Accordingly, Defendants have also objected to the following Orders: (1) Order granting Frontier's Motion to Intervene (ECF No. 196); (2) Order granting Frontier's counsel limited access during the meet and confer (ECF No. 196); and (3) Orders permitting substitution of LMG and adding LMG as a party (ECF Nos. 218, 224).[1]

On November 14, 2016, Judge Wilson entered an Order memorializing the briefing schedule and summarizing the procedure going forward:

> Before the Court are the following motions: Motion to [Modify] (Dkt. 194), and Motion to Strike [] (Dkt. 200) (the "Motions"). In addition, Intervenors Karen Keith, John Smaligo, and Ron Peters have filed an Appeal Or, In The Alternative, Objection To The Magistrate's Orders Allowing Intervention, Substitution And Modification Of The Protective Order (Dkt. 227). The Court held a hearing on November 4, 2016, to consider the Motions. ***During the hearing the parties agreed that the Objection (Dkt. 227), and the Motion should be considered by Magistrate Judge Wilson before being considered by the District Court Judge.*** In this regard, the Court establishes the following briefing schedule for the purpose of allowing Judge Wilson to do so: On or before November 11, 2016, Defendant Stanley Glanz may file a brief for the purpose of addressing the Objection and the Motions;[2] on or before December 2, 2016, Lorton Media and Plaintiff may file a response to the Objection and/or to Defendant Glanz's response;[3] and, or before December 16,

---

[1] Defendants' Adoption (ECF No. 236) was not docketed as a motion or expressly referred. Defendants' Adoption is properly before the Court based on Judge Dowdell's referral of Commissioners' Objection. Based on the record during the 11/4/16 Hearing, Judge Dowdell intended for Judge Wilson to consider any of Defendants' objections to intervention, substitution, and modification, along with Commissioners' objections, in the first instance.

[2] Defendants had already filed Defendants' Adoption, and this filing simply memorialized the briefing schedule set at the hearing.

[3] Plaintiffs did not file a brief.

> 2016, Defendant Glanz and [Commissioners] may file a reply. Once the Court
> enters its decision on the Motions and the Objection, that decision will be stayed (if
> determined by opinion) for a period of ten (10) days pending any appeal. In the
> event of an appeal, the decision will be stayed until the appeal is resolved by the
> District Court Judge.

ECF No. 242 (emphasis and footnotes added). Defendants, Commissioners, and Frontier filed additional briefs addressing Commissioners' Objection, Motion to Strike, and Motion to Modify. ECF Nos. 274, 282, and 283. In their reply brief, Defendants re-urged their standing argument. *See* ECF No. 283.

On December 5, 2016, LMG filed a Notice of Name Change, informing the Court that it "converted its business entity to an Oklahoma Not-For-Profit corporation and has changed its name to Frontier Media Group, Inc." ECF No. 275. Therefore, Frontier Media Group ("FMG"), and not Frontier or LMG, is the entity currently seeking modification of the SPO. For ease of reference, Frontier, LMG, and FMG are collectively referred to as "Press."

After the completion of briefing, Judge Wilson conducted a hearing on the Motion to Modify, Motion to Strike, and Commissioners' Objection ("3/21/17 Hearing").[4] At the outset, Judge Wilson repeated his intention to issue one Order or Report and Recommendation ruling on all outstanding issues and explained that all parties could file objections. Commissioners' counsel stated they objected to such procedure because Commissioners had "perfected appeals" to Judge Dowdell of Judge Wilson's Orders granting intervention, substitution, and modification. Commissioners' counsel questioned the procedural propriety of Judge Dowdell's referral of Commissioners' Objection to Judge Wilson. Judge Wilson reminded counsel of discussions during the 11/4/16 Hearing and that Commissioners failed to object at that time. Judge Wilson expressed his view that Judge Dowdell's referral was entirely consistent with the discussion during

---

[4] There is no transcript, but the Court listened to a recording of the hearing.

the 11/4/16 Hearing. Following Judge Wilson's resignation, all outstanding motions were reassigned to the undersigned, including Commissioners' Objection, Motion to Strike, and Motion to Modify.

## II. Treatment of Commissioners' Objection (ECF No. 227)

Once referred by Judge Dowdell, Commissioner's Objection ceased to be an "objection" as that term is used in Federal Rule of Civil Procedure 72. The Court construes Commissioner's Objection (ECF No. 227), which was adopted by Defendants (ECF No. 236), as a motion to reconsider pursuant to Federal Rule of Civil Procedure 59(e). Considering the factual record explained above, this best effectuates the intent of Judge Dowdell in referring Commissioners' Objection. Although the undersigned will rule on the Motion to Reconsider, it is procedurally identical to Judge Wilson reconsidering his Orders in the first instance.

Whether Commissioners agreed to this procedure is irrelevant as long as Judge Dowdell had authority to refer the issues for reconsideration by Judge Wilson. The Court finds no reason a district judge would lack such authority. In this district, a magistrate judge has reconsidered a discovery order while a Rule 72(a) objection was pending. *See Lindley v. Life Investors Ins. Co. of Am.*, No. 08-CV-379-CVE-PJC, 2010 WL 1542568, at *1 (N.D. Okla. Apr. 15, 2010). Here, the district judge disavowed his intent to rule on the Rule 72 objection and essentially directed the magistrate judge to consider all arguments and change or clarify his rulings, if warranted, in the first instance. Commissioners' Objection (ECF No. 227) will therefore be treated as a Motion to Reconsider.[5]

---

[5] Even assuming "a Rule 72(a) motion vitiates a magistrate judge's authority to amend a non-dispositive order," *see Benevis, LLC V. Mauze & Bagby, PLLC*, No. 5:12-CV-36, 2015 WL 12763537, at *2 (S.D. Tex. Dec. 14, 2015) (explaining disagreement among magistrate courts), that would not apply here because the district judge expressed his intent for the magistrate judge to reconsider the issues prior to his review.

### III. Motion to Reconsider (ECF No. 227)

A Rule 59(e) motion to reconsider is proper where there is "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, or (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *Lindley*, 2010 WL 1542568, at *1 (applying Rule 59(e) to reconsideration of non-dispositive motion). For reasons explained below, the Court finds legal error in the Order granting the Motion to Intervene based on Press's failure to demonstrate standing and vacates such Order (ECF No. 196).

Press moved to intervene pursuant to Federal Rule of Civil Procedure 24(b)(1) for the purpose of "seek[ing] to modify an order that prevents the parties from making public the statements of officers on matters of public concern." ECF No. 177 at 12-13. Upon intervention, Press ultimately sought "to modify the protective order with respect to the transcripts of the depositions of the County Commissioners and from Sheriff Stanley Glanz." *Id.* at 13. When Judge Wilson granted intervention, all Transcripts were pretrial discovery materials that had not been filed of record and had not become "judicial records." *See generally Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016) ("A 'judicial document' or 'judicial record' is a filed item that is "relevant to the performance of the judicial function and useful in the judicial process.").

As explained above, Defendants challenged Press's standing in its original response to the Motion to Intervene and in support of the Motion to Reconsider. *See* ECF Nos. 192, 283. Defendants relied upon *Oklahoma Hospital Association v. Oklahoma Publishing Company*, 748 F.2d 1421, 1424-25 (10th Cir. 1984), which held that a publishing company seeking public access to non-judicial records lacked standing to challenge a protective order. In its reply, Press argued that "[a] showing of standing is not necessary here." ECF No. 192 at 5. Press cited *New York v*

*Microsoft Corporation*, 206 F.R.D. 19, 20 (D.C. Cir. 2002), which permitted the press to intervene under Rule 24(b) for the "limited purpose of advancing their motion for access to depositions, deposition transcripts, and video tapes" without any discussion of standing. Press did not address *Oklahoma Hospital*, attempt to factually distinguish it, or argue it had been called into question by other Tenth Circuit decisions. Press also made no attempt to demonstrate standing and rested on its legal argument.

Upon reconsideration of the Motion to Intervene, the Court must address two issues: (1) whether Press was required to demonstrate standing in order to intervene for the purpose of seeking modification of a protective order during this ongoing litigation; and (2) if yes, whether Press demonstrated standing. Standing is a threshold consideration that must be considered at all stages of the proceedings. *See City of Colo. Springs v. Climax Molybdenum Co.*, 587 F.3d 1071, 1078 (10th Cir. 2009) (addressing intervenor's standing as a threshold question even though not raised by parties or district court).

### A. Rule 24(b) is Proper Procedural Mechanism to Seek Modification of Protective Order

As an initial matter, there is no question that Rule 24(b) is the proper procedural mechanism for a non-party to challenge a protective order. *See United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) ("The courts have widely recognized that the correct procedure for a nonparty to challenge a protective order is through intervention for that purpose."); *Burke v. Glanz*, No. 11-CV-720-JED-PJC, 2013 WL 211096, at *3 (N.D. Okla. Jan. 18, 2013) ("[T]his Court finds that the correct procedure is for nonparties to intervene if they seek access to protected documents."). Under the text of Rule 24(b)(1), a court may permit anyone to intervene who files a timely motion, and who "is given a conditional right to intervene by a federal statute" or "has a claim or defense that shares with the main action a common question of law or fact."

Fed. R. Civ. P. 24(b)(1)(A), (B).  A court must also consider whether intervention "will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3). Permissive intervention is within the sound of discretion of the court.  *Shump v. Balka*, 574 F.2d 1341, 1345 (10th Cir. 1978).

In the context of third-party claims of access to information generated through judicial proceedings, courts take a flexible approach to the "common question of law or fact" requirement. *See United Nuclear Corp.*, 905 F.2d at 1427 ("When a collateral litigant seeks permissive intervention solely to gain access to discovery subject to a protective order, no particularly strong nexus of fact or law need exist between the two suits.").  *United Nuclear*'s flexible approach to the "common question of fact or law" prong extends to non-parties seeking to modify protective orders for purposes of gaining public access to protected or sealed materials.  *See SanMedica Int'l v. Amazon.com Inc.*, No. 2:13-CV-00169, 2015 WL 6680222, at *2 (D. Utah Nov. 2, 2015); *Angilau v. United States*, 2:16-00992-JED-PJC (D. Utah July 27, 2017) (ECF No. 81), *aff'd*, No. 216CV00992-JED-PJC, 2018 WL 1271894 (D. Utah Mar. 9, 2018).  Further, "[e]very court of appeals to have considered the matter has come to the conclusion that Rule 24 is sufficiently broad-gauged to support a request of intervention for the purposes of challenging confidentiality orders." *Jessup v. Luther*, 227 F.3d 993, 997 (7th Cir. 2000); *Pansy v. Stroudsburg*, 23 F.3d 772, 778 (3d Cir. 1994) ("[A]ny party challenging a confidentiality order "meet[s] the requirement of Fed. R. Civ. P. 24(b)(2) that their claim must have 'a question of law or fact in common' with the main action.").

### B. Was Press Required to Demonstrate Article III Standing?

The next question is whether Press was required to demonstrate Article III standing in addition to Rule 24(b)'s requirements.  The Tenth Circuit has held that "[a]ny party, whether original or intervening, that seeks relief from a federal court must have standing to pursue its

claims." *Climax Molybdenum Co.*, 587 F.3d at 1078. Unlike original parties, intervening parties may utilize "piggyback standing." *Id.* Under this method, the "proposed intervenor [is] permitted to intervene on the basis of an existing party's standing to assert the claim at issue." *Id.*; *see also San Juan Cty., Utah v. United States*, 503 F.3d 1163, 1172, 1207 (10th Cir. 2007) (holding that "parties seeking to intervene under Rule 24(a) or (b) need not establish Article III standing so long as another party with constitutional standing on the same side as the intervenor remains in the case.").[6] To establish "piggyback standing," the intervenor "must demonstrate that there remains . . . another party with Article III standing" on the "same side" as the intervenor. *Climax Molybdenum Co.*, 587 F.3d at 1080. If piggyback standing is not shown, the intervenor must demonstrate independent standing under Article III. *See id.* at 1079. In order to independently satisfy Article III requirements, an intervenor must show: "(1) [that] it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.*

These general rules are not easily applied to Press's request for intervention for the limited purpose of modifying a protective order to obtain public access to protected documents. *See Bond v. Utreras*, 585 F.3d 1061, 1070 (7th Cir. 2009) (explaining that "[i]ntervention for purposes of challenging a protective order is an unusual species of permissive intervention that triggers its own unique standing issues"). According to the Seventh Circuit, "most cases addressing third party challenges to protective orders in ongoing lawsuits overlook the standing question." *Bond*, 585 F.3d at 1071 n.7; *see, e.g., Microsoft Corporation*, 206 F.R.D. at 21 (permitting media intervenor

---

[6] *San Juan County* was abrogated on other grounds by *Hollingsworth v. Perry*, 570 U.S. 693 (2013). *See W. Energy Alliance v. Zinke*, 877 F.3d 1157, 1165 (10th Cir. 2017).

11

to seek public access to discovery materials without discussing standing); *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 232 (2d Cir. 2001) (affirming trial court's modification of protective order to permit public access to deposition transcripts without discussing standing). Tenth Circuit law does not provide a clear answer. In *United Nuclear*, the Tenth Circuit permitted "collateral litigants" to intervene under Rule 24(b) for the purpose of modifying a protective order to gain access to pretrial discovery materials for use in other litigation, without any discussion of standing requirements. *United Nuclear Corp.*, 905 F.2d at 1427.[7] In *Oklahoma Hospital Association v. Oklahoma Publishing Company*, 748 F.2d 1421, 1424-25 (10th Cir. 1984), which is more factually on point, the Tenth Circuit required a publishing company seeking modification of a protective order for the purpose of gaining public access to discovery materials to demonstrate standing. But *Oklahoma Hospital* did not discuss Rule 24(b) intervention or the interplay between Rule 24(b) and standing.

Based on the limited arguments presented at this time, the Court is not persuaded to overlook or dispense with standing requirements. District courts within the Tenth Circuit have required proposed media intervenors seeking "public access" to protected documents to demonstrate standing in both ongoing and concluded litigation. *See Exum v. U.S. Olympic Comm.*, 209 F.R.D. 201, 205 (D. Colo. 2002) (ongoing litigation) ("The parties seeking intervention under Rule 24(b) must have standing to challenge the proposed protective order."); *SanMedica Int'l v. Amazon.com, Inc.*, No. 2:13-CV-00169, 2015 WL 6680222, at *3 (D. Utah Nov. 2, 2015) (concluded litigation) (addressing standing as separate inquiry); *Angilau v. United States*, 2:16-00992-JED-PJC (D. Utah July 27, 2017) (ECF No. 81) (ongoing litigation) (addressing standing as part of Rule 24(b) inquiry), *aff'd*, No. 216CV00992-JED-PJC, 2018 WL 1271894 (D. Utah Mar. 9, 2018); *see also United States v. Pickard*, 733 F.3d 1297, 1301-02 (10th Cir. 2013) (requiring

---

[7] The court placed the intervenors under the same restrictions as the original parties and did not permit wholesale public access. *See id.* at 1426.

criminal defendant to demonstrate standing to seek unsealing of DEA records where criminal case had concluded). In the most thorough circuit court opinion discussing the intersection of Rule 24(b) intervention and standing, the Seventh Circuit cited the Tenth Circuit as requiring an intervenor to have "independent standing to intervene in a live controversy for the purpose of challenging a protective order." *See Bond*, 585 F.3d at 1071 n.7 (citing *Oklahoma Hospital Association*); *see also Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 787 n.12 (1st Cir. 1988) (citing *Oklahoma Hospital Association* as case requiring media entity seeking public access to show standing). Based on this treatment of *Oklahoma Hospital Association*, and in the absence of clear guidance from the Tenth Circuit, the Court finds Press was required to demonstrate standing. *See Colo. Springs*, 587 F.3d at 1078-79 ("[F]ederal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of the jurisdictional doctrines.").[8]

### C. Did Press Demonstrate Article III Standing?

The Court easily concludes Press did not meet its burden to demonstrate Article III standing. Press did not even attempt to do so and relied solely upon its legal argument. While facts may have existed demonstrating standing, Press did not present those facts in support of its

---

[8] Notably, case law in other circuits offers support for Press's position. *See Flynt v. Lombardi*, 782 F.3d 963, 967 (8th Cir. 2015) ("[W]hen a party is seeking to intervene only to modify a protective order or unseal documents, and not to litigate a claim on the merits, an independent basis of jurisdiction is not required."); *Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006) (permitting state agency to seek modification of protective order during ongoing litigation) ("[T]here is no Article III requirement that intervenors have standing in a pending case."); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992) (holding that "no independent jurisdictional basis was necessary" because "[i]ntervenors do not ask the district to rule on additional claims or seek to become parties to the action" but instead "ask the court only to exercise that power which it already has, i.e., the power to modify the protective order"); *Bond*, 585 F.3d at 1071 (holding that media intervenor seeking modification of protective order for purposes of seeking public access must establish standing where litigation has concluded, but failing to reach question in relation to ongoing litigation).

Motion to Intervene. Nor can the Court conclude that all Article III requirements were obviously satisfied in this case. Although *Oklahoma Hospital Association* indicates Press may have suffered an "injury in fact" for purposes of Article III standing, *see Okla. Hosp. Ass'n,* 748 F.2d at 1424, redressability is more problematic, *cf. Exum*, 209 F.R.D. at 205 (finding "redressability" prong satisfied based on party's willingness to disseminate unfiled discovery materials). The Court cannot engage in speculation or make assumptions regarding standing. *See Climax Molybdenum Co.*, 587 F.3d at 1078 (intervenor bears burden of proving standing). The Order granting intervention (ECF No. 196) is therefore vacated. Upon reconsideration, the Motion to Intervene (ECF No. 177) is denied based on Press's failure to demonstrate Article III standing. The Court does not reach any conclusion as to whether Press could have shown standing had it attempted to do so, and the Court's denial of Press's Motion to Intervene is without prejudice.[9]

**IV.  Conclusion**

Commissioners' Motion to Reconsider Judge Wilson's Order granting intervention (ECF No. 227), which was adopted by Defendants (ECF No. 236), is **GRANTED,** based solely on Press's failure to demonstrate standing.[10] Judge Wilson's Order granting the Motion to Intervene (ECF No. 196) is **VACATED**. Upon reconsideration, Press's original Motion to Intervene (ECF No. 177) is **DENIED**, based on Press's failure to demonstrate standing. This denial is without

---

[9] Portions of Glanz's deposition have been filed of record, which would alter the Article III standing analysis. *See SanMedica Int'l*, 13-CV-169, 2015 WL 6680222, at *4 (holding that granting motion to unseal court filing would redress injury of being denied public access). If the deposition is a "judicial record," this impacts the modification analysis. *See Pickard*, 733 F.3d at 1302 (holding that judicial records entitled to strong presumption of public access).

[10] All other objections to Judge Wilson's Orders raised by Commissioners and Defendants are moot.

prejudice to re-filing.[11]  The pending Motion to Strike (ECF No. 200) and Motion to Modify (ECF No. 194) are **DENIED AS MOOT**.

      **SO ORDERED** this 31st day of March, 2018.

                                                                                           *[signature: Jodi F. Jayne]*
                                                          **JODI F. JAYNE, MAGISTRATE JUDGE**
                                                          **UNITED STATES DISTRICT COURT**

---

[11] Within the Tenth Circuit, courts have treated denials of motion to intervene as non-dispositive rulings. *In re Motor Fuel Temperature Sales Practices Litig.*, 261 F.R.D. 577, 583 (D. Kan. 2009) (reviewing objections to denial of intervention under Rule 72(a)); *PDC Energy, Inc. v. DCP Midstream, LP*, 2014 WL 12676230 at *1 (D. Colo. September 3, 2013); *Pub. Serv. Co. of Colo. v. Bd. of Cty. Comm'rs of San Miguel Cty.*, No. 04-CV-01828 REB CBS, 2005 WL 2293650, at *3 (D. Colo. Sept. 19, 2005).  In this case, treatment as a non-dispositive ruling is appropriate because the Court's denial of intervention is without prejudice to re-filing.