## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEBORAH YOUNG, as Special Administrator of the Estate of Gwendolyn Young, deceased, | ) ) ) |
| Plaintiff, | ) ) |
| | ) Case No. 13-CV-315-JED-JFJ |
| v. | ) ) ) |
| CORRECTIONAL HEALTHCARE COMPANIES, INC., *et al.,* | ) ) ) |
| Defendants. | ) ) |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO
### DEFENDANTS' MOTIONS *IN LIMINE*

COMES NOW, the Plaintiff, Deborah Young ("Plaintiff"), as Special Administrator of the Estate of Gwendolyn Young ("Ms. Young"), and respectfully submits her Response in Opposition to Defendants Correctional Healthcare Companies, Inc. ("CHC") and Andrew Adusei, M.D.'s ("Dr. Adusei") (hereinafter, collectively referred to as the "CHC Defendants") Motions *in Limine* (Dkt. #610) as follows:

### Introductory Statement

In their Motion *in Limine*, the CHC Defendants exhibit a fundamental misunderstanding as to the nature of Plaintiff's claims and the scope of relevant evidence in this case. Their view of relevancy is overly narrow and contrary to law. This is not simply a tort case where the scope of relevant evidence would be limited to the immediate circumstances surrounding the specific incident involving Ms. Young. Rather, Plaintiff alleges violations of the United States Constitution (pursuant to 42 U.S.C. § 1983). Plaintiff, as Special Administratrix of Ms. Young's estate, brings her claims against CHC under a municipal liability / *Monell* theory. All of Plaintiff's § 1983 claims against CHC stem from

its promulgation, implementation, maintenance and/or responsibility for policies, practices and/or customs that deprived Ms. Young of her federally protected rights.

As this Court already held and reasoned in denying summary judgment in this matter:

> Plaintiff has presented sufficient evidence to demonstrate the existence of a fact issue preventing summary judgment on the *Monell* claim against CHC. Based on the record evidence, construed in plaintiff's favor at this stage, a reasonable jury could find that, in the years prior to Ms. Young's death in 2013, **CHC maintained a policy and custom of failing to provide medical care in response to serious medical needs of Jail inmates, failing to provide proper training and supervision regarding emergent medical conditions, and continuing to adhere to a constitutionally deficient system of care for detainees with serious medical needs. In the three years before Ms. Young, died, there were systemic, repeated, and documented failures to deliver appropriate healthcare, which specifically included delay in seeking emergency medical care for inmates with symptoms warranting emergency treatment, resulting in deaths of other inmates under CHC's care.** CHC was also aware of **other documented failures**, which were cited in audits in 2009 and 2010 as including a failure to comply with mandatory health standards, understaffing of medical personnel, deficiencies in doctor coverage, a lack of health services oversight and supervision, failure to provide training, delays in delivery of health care, and improper documentation of health services. **The evidence here would support a finding that CHC continued its failure to provide adequate medical care and failed to address documented deficiencies, which amounted to a custom that was the moving force behind the deliberately indifferent failure of medical staff to provide or obtain timely and appropriate treatment for Ms. Young.** CHC's Motion for Summary Judgment … as to plaintiff's § 1983 claim is thus denied.

*Young v. Glanz,* No. 13-CV-315-JED-JFJ, 2020 WL 5937899, at *8 (N.D. Okla. Oct. 6, 2020).

As is clear from this Court's order denying summary judgment, in a case such as this, relevant evidence goes well beyond the immediate circumstances surrounding the decedent and may properly include evidence of other similar incidents, audits and internal

policy violations. This is well known to the CHC Defendants. Yet, in their Motions *in Limine*, they seek to improperly restrict Plaintiff's evidence in a manner that fails to account for the pertinent legal framework of this action. Except where otherwise indicated below, the CHC Defendants' Motions *in Limine* lacks merit and should be denied.

### Summary of Underlying Substantive Legal Standards

Plaintiff alleges that Ms. Young was subjected to unconstitutionally inadequate medical care while housed at the Tulsa County Jail. Plaintiff specifically alleges that CHC and Dr. Adusei were deliberately indifferent to Ms. Young serious medical needs and that this deliberate indifference was a proximate cause of her death. This Court has already held that Plaintiff has presented sufficient evidence to survive summary judgment on the deliberate indifference claim. *See, e.g., Young*, 2020 WL 5937899, at *4.

Plaintiff's claims against CHC are being brought under municipal liability or *Monell* theory. In *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1977) and subsequent cases, the Supreme Court has consistently "required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997).

As the Tenth Circuit has succinctly stated, in order to establish *Monell* liability, the plaintiff "'must prove '(1) official policy or custom[,] (2) causation, and (3) state of mind.'" *Hinkle v. Beckham Cty. Bd. of Cty. Commissioners*, 962 F.3d 1204, 1239 (10th Cir. 2020) (quoting *Burke v. Regalado*, 935 F.3d 960, 998 (10th Cir. 2019) (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013)).

Policies or customs meeting this standard may arise from "a formal regulation or policy statement, an informal custom that amounts to a widespread practice, decisions of municipal employees with final policymaking authority, ratification by final policymakers

of the decisions of subordinates to whom authority was delegated, and the deliberately indifferent failure to adequately train or supervise employees." *Hinkle*, 962 F.3d at 1239–40 (10th Cir. 2020) (quoting *Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017)). A failure to train or supervise are specific grounds for *Monell* liability. *See, e.g., Lance v. Morris*, 985 F.3d 787, 800-02 (10th Cir. 2021).

With respect to causation, the Circuit has explained that "the challenged policy or practice must be 'closely related to the violation of the plaintiff's federally protected right.'" *Hinkle*, 962 F.3d at 1241 (quoting *Schneider*, 717 F.3d at 770 (quoting Martin A. Schwartz, *Section 1983 Litigation Claims & Defenses*, § 7.12[B] (2013)).

As noted, *supra*, this Court previously held that Plaintiff "presented sufficient evidence to demonstrate the existence of a fact issue preventing summary judgment on the *Monell* claim" against CHC. *Young*, 2020 WL 5937899, at *8.

## Discussion

### A.   General Standards of Review

"[A] court is almost always better situated during the actual trial to assess the value and utility of evidence. Consequently, a court should reserve its rulings [on a motion in *limine*] for those instances when the evidence is *plainly inadmissible on all potential grounds*." *Townsend v. Benya*, 287 F.Supp.2d 868, 872 (N.D.Ill. 2003) (emphasis added). As the United States District Court for the Western District of Oklahoma has observed, "[s]ome courts suggest broad rulings on relevance and unfair prejudice are disfavored, and the preferred practice is to rule on evidentiary matters at trial in a developed factual context." *Metzger v. American Fidelity Assur. Co.*, 2007 WL 4342082, *1 (W.D. Okla. Dec. 7, 2007) (citing *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975)).

"[A]ll relevant evidence is admissible," except as otherwise provided by law. Fed. R. Evid. 402. "The scope of relevancy is bounded only by the liberal standard of Rule 401…." *United States v. McVeigh,* 153 F.3d 1166, 1190 (10th Cir. 1998). Under Rule 401, evidence is considered relevant in the event it has "*any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added). "'The determination of whether the evidence is relevant is a matter within the sound discretion of the trial court.'" *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1518 (10th Cir. 1995) (quoting *Texas E. Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 566 (10th Cir. 1978)).

Rule 403 of the Federal Rules of Evidence provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. When considering a Rule 403 challenge, the court should "give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Mendelsohn v. Sprint/United Management Co.,* 466 F.3d 1223, 1231 (10th Cir. 2006), *vacated on other grounds*, 552 U.S. 379 (2008). Exclusion of evidence under Rule 403 is an extraordinary remedy that should be used sparingly. *See, e.g., World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1139 (10th Cir. 2006); *United States v. Perryman,* 2012 WL 1536745, *2 (N.D. Okla. May 1, 2012).

B. **Specific Matters Raised by the CHC Defendants**

    1. **Dr. Adusei's Licensure History is Admissible**

Dr. Adusei was CHC's "Medical Director" at when Ms. Young was housed at the

Jail. Dr. Adusei was also, ostensibly, Ms. Young's treating physician at the Jail, though he "never saw or examined Ms. Young until she was already dead, [despite] evidence that he was aware of her deterioration and symptoms." *Young v. Glanz*, No. 13-CV-315-JED-JFJ, 2020 WL 5937899, at *4 (N.D. Okla. Oct. 6, 2020). In 2013, Dr. Adusei admitted to forging another physician's signature on a prescription pad and thereby fraudulently obtaining controlled substances. *See* Adusei Licensure Order (CASE NO. 13-08-4799) (Dkt. #491-25). As a result, Dr. Adusei was publicly reprimanded by the Medical Licensure Board, ordered to complete 100 hours of community service and to complete a remedial prescribing course. *Id.*

As their first motion *in limine* issue, the CHC Defendants argue that evidence regarding "interactions Dr. Adusei has had with any medical licensure board or body" is irrelevant and "unfairly prejudicial." Dkt. #610 at 2. The primary basis of the CHC Defendants' argument is that Dr. Aduesei's "interactions" with the Medical Licensure Board post-date the "care" provided to Ms. Young. Review of the Board's Order reveals that Dr. Adusei forged the prescriptions in August of 2013, about six months after Ms. Young's death. These events are close enough in temporal proximity that the Medical Licensure Board materials are relevant to questions concerning Adusei's competency at the time he was Medical Director at the Jail. Furthermore, Dr. Adusei's admitted falsification of prescriptions, regardless of when the misconduct occurred, bears on his truthfulness and veracity as a witness. Thus, at a minimum, the Licensure Board issues are a proper subject of cross-examination under Rule 608. *See, e.g., Schmidt v. Medicalodges,* Inc., 523 F. Supp. 2d 1256, 1259 (D. Kan. 2007), *aff'd,* 350 F. App'x 235 (10th Cir. 2009) ("Evidence that Ms. Ealy lied on her employment application was probative of her truthfulness"); *United States v. Girdner,* 773 F.2d 257, 260–61 (10th Cir.1985) (under Rule 608(b), a party may cross-

examine a witness about previous falsehoods as probative of truthfulness); *Hahn v. Minnesota Beef Indus., Inc.,* 2002 WL 32658476, at *1 (D.Minn. May 29, 2002) (evidence of untruthfulness on a job application was relevant to a witness's character for truthfulness, subject to Rule 608(b)); *Davidson Pipe Co. v. Laventhol and Horwath,* 120 F.R.D. 455, 462–63 (S.D.N.Y.1988) (employment applications carry an obligation for truthfulness, such that falsehoods in such a situation may be probative of a lack of credibility or truthfulness under Rule 608(b)); *United States v. Drake,* 932 F.2d 861, 867 (10th Cir.1991) (rejecting argument for exclusion under Rule 608(b); questions upon cross-examination do not constitute extrinsic evidence under that rule, even if they refer to records not in evidence).

Motion *in limine* No. 1 should be denied.

**2. Plaintiff May Put on Evidence Regarding Negligence or Indifference of Healthcare Providers Not Specifically Named in the Complaint**

The CHC Defendants next argue that Plaintiff should be restricted to only offering testimony and/or evidence of inadequate medical care by healthcare providers specifically named in this lawsuit. Dkt. #610 at 2-3. Presumably, the CHC Defendants mean providers named in Plaintiff's Amended Complaint. However, as the Tenth Circuit has observed, when bringing a municipal liability claim, **"'the plaintiff need not sue the individual tortfeasors at all, but may proceed solely against the municipality.'"** *Burke v. Regalado,* 935 F.3d 960, 1010 (10th Cir. 2019) (quoting *Askins v. Doe No. 1,* 727 F.3d 248, 253 (2d Cir. 2013) (emphasis added). Through the summary judgment briefing, Plaintiff presented evidence that multiple CHC medical providers were deliberately indifferent to Ms. Young's serious medical needs. In addition to Dr. Adusei, these providers include Nurse White, Nurse Chinaka, Nurse Gammill and Nurse Metcalf. Also, contrary to CHC's conclusory statement, Plaintiff's expert has numerous criticisms of the acts and omissions

of these providers. *See* Dkt. #491-2. Plaintiff was not required to name these individuals in the Complaint and may properly put on evidence of their deliberate indifference as part of the *Monell* theory against CHC. *See Burke*, 935 F.3d at 1010.

CHC also asserts that Plaintiff should not be permitted to introduce evidence of a failure to train because Plaintiff raised no such claim in the Amended Complaint. Contrary to this unsupported assertion, Plaintiff makes numerous references to CHC's failure to train in the Amended Complaint. *See, e.g.,* Dkt. #4 at ¶¶ 91, 96 and 100.  And this Court recognized the merit of Plaintiff's failure to train claims in denying summary judgment. *See, e.g., Young*, 2020 WL 5937899, at *8 ("[A] reasonable jury could find that, in the years prior to Ms. Young's death in 2013, CHC maintained a policy and custom of failing to provide medical care in response to serious medical needs of Jail inmates, **failing to provide proper training** and supervision regarding emergent medical conditions, and continuing to adhere to a constitutionally deficient system of care for detainees with serious medical needs.").

Motion *in limine* No. 2 should be denied.

**3.     Plaintiff Has No Intention of Referencing Claims That Have Been Dismissed**

Because Plaintiff has no intention of mentioning -- at trial -- claims that have been dismissed, motion *in limine* No. 3 is moot.

**4.     Other Cases Against CHC, Including the Elliott Williams Case, Are Relevant and Admissible**

In the case at bar, Plaintiff intends to use evidence of other related or similar cases (against CHC) to meet her burden of establishing the existence of an unconstitutional practice, policy or custom.  Such evidence is highly relevant in a case, such as this, involving a municipal liability theory. *See, e.g., Am. Jr. Proof of Facts 3rd, Policy Misconduct as Municipal*

*Policy or Custom*, § 14 (December 2012) ("In fact, proof of custom generally ***requires evidence of similar incidents*** in order to establish that the practice was sufficiently widespread and longstanding."). Indeed, this Court made specific and repeated reference to one such case, the Elliott Williams case (a.k.a. "*Burke*" case), in denying the CHC Defendants' motion for summary judgment. *See, e.g., Young v. Glanz,* No. 13-CV-315-JED-JFJ, 2020 WL 5937899, at *6 (N.D. Okla. Oct. 6, 2020) (citing and quoting *Burke v. Regalado,* 935 F.3d 960, 1010 (10th Cir. 2019)).

The Tenth Circuit particularly requires that the municipal liability plaintiff prove the requisite "state of mind." *See, e.g., Schneider v. City of Grand Junction Police Dep't,* 717 F.3d 760, 769-671 (10th Cir. 2013). The Tenth Circuit imposes a requirement that the plaintiff prove "deliberate indifference." However, "[d]eliberate indifference … is defined differently for Eighth Amendment and municipal liability purposes." *Barney v. Pulsipher,* 143 F.3d 1299, 1308, n. 5 (10th Cir. 1998). Importantly, in the municipal liability context, "[t]he deliberate indifference standard may be satisfied when the municipality has actual ***or constructive notice*** that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney,* 143 F.3d at 1307 (10th Cir. 1998) (emphasis added). Put another way, "[i]n the municipal liability context, deliberate indifference is an objective standard which is satisfied if the risk is so obvious that the official should have known of it." *Id.* at 1308, n. 5 (citing *Farmer v. Brennan,* 511 U.S. 825, 840–42 (1994)). "'In most instances, notice can be established by proving the existence of a ***pattern of tortious conduct.*** In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly

obvious consequence of a municipality's action or inaction[.]'" *Schneider,* 717 F.3d at 771 (quoting *Barney,* 143 F.3d at 1307) (emphasis added).

Thus, Plaintiff *must* be permitted to introduce evidence of other cases of inadequate medical care provided by CHC to inmates at the Jail. *See also Vann v. City of New York,* 72 F.3d 1040, 1051 (2nd Cir. 1995) ("An obvious need [for more or better supervision] may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents…."); *Green v. Fulton,* 157 F.R.D. 136, 141 (D. Me. 1994) ("Given the plaintiff's need to show that [defendant official] was put on notice of behavior of his subordinates that was likely to result in a constitutional violation in order to prove deliberate indifference on his part… information relating to past similar incidents, or the absence of any such incidents, is highly relevant to the plaintiff's claim."); *Torres v. Kuzniasz,* 936 F. Supp. 1201, 1211 (D.N.J. 1996) ("[S]upervisory opinions and responses to civilian complaints are highly relevant to proving municipal liability under 42 U.S.C. § 1983 for a municipal entity's alleged failure to adequately respond to complaints of police brutality."); *Gentile v. County of Suffolk,* 129 F.R.D. 435, 447 (E.D.N.Y. 1990) *aff'd,* 926 F.2d 142 (2d Cir. 1991) ("Defendants' assertion that the SIC report is inadmissible as lacking in probative value because it does not deal with the underlying… criminal case is without merit. It is sufficient for purposes of Rules 401 and 402 that the report tends to support an inference of an affirmative link between municipal policy and the *type* of individual behavior involved here."); *Langford v. City of Elkhart,* 1992 WL 404443 (N.D. Ind. Apr. 21, 1992) ("Plaintiff's complaints… include claims of municipal and supervisory liability based upon negligent hiring, failure to train, and a municipal policy or custom of violence and intimidation…. These claims portend a broad inquiry into police practices and procedures,

citizen complaints, similar incidents involving the use of force, and internal disciplinary actions, extending well beyond the immediate circumstances surrounding plaintiffs' arrests.").

While the CHC Defendants assert that evidence regarding other similar cases is irrelevant, this evidence is "generally require[d]" in a case, such as this, involving claims of municipal liability. CHC is well aware of this requirement and their contrary arguments can only be characterized as frivolous. Moreover, the central relevance of such evidence is not outweighed by the danger of unfair prejudice under Rule 403. Nor is such evidence inadmissible under Rule 404.

Motion *in limine* No. 4 should be denied.

**5.    Testimony and Statements of Mica Shoate Should Not Be Prohibited**

As discussed in Plaintiff's Response to the CHC Defendants' Motion for Summary Judgment, Mica Shoate was an inmate in the Jail's Special Housing Unit ("SHU"), who directly observed Ms. Young during the pertinent timeframe. Ms. Shoate also wrote contemporary notes documenting her observations. *See* Dkt. #491; 491-6 and 491-7. As a witness with actual knowledge of Ms. Young's treatment at the Jail, Ms. Shoate's testimony and notes are extremely relevant and admissible.

The CHC Defendants argue that Plaintiff should be prohibited from introducing Ms. Shoate's testimony and notes at trial because they "will be deprived of the opportunity to cross examine her regarding her criminal convictions as well as her assertion that she is "mentally retarded." Dkt. #610 at 6. But, the CHC Defendants never sought leave to re-open discovery to depose Ms. Shoate on these topics. Furthermore, the CHC Defendants have not asked to amend their exhibit list to include information on Ms. Shoate's conviction. These failures the CHC Defendants' own doing and provide no basis to preclude Ms. Shoate's probative eyewitness testimony.

Motion *in limine* No. 5 should be denied.

6. **The Fact that the CHC Defendants Are No Longer Providing Services at the Jail is Relevant**

CHC was under contract to provide medical and mental health care services to inmates at the Jail from June 20, 2005 through November 1, 2013. As this Court knows, and has found, there is evidence that despite knowing of vast problems with CHC and the Jail's medical system, Former Sheriff Glanz, TCSO and CHC took no discernable action to alleviate the substantial risks to inmates. CHC's competency as a medical contractor is relevant to Plaintiff's municipal liability theory. Significantly, for many years, Former Sheriff Glanz failed to remove or replace CHC as the Jail medical contractor -- going so far as to rate CHC a "9 out of 10" -- even after multiple Jail deaths, including the death of Ms. Young, and in the face of overwhelming evidence that the "care" provided by CHC was wholly and dangerously inadequate. The reasons for the decision to ultimately terminate the CHC contract is pertinent to the existence of a policy or custom of inadequate medical care, staffing, training and supervision. *See, e.g., Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985), *cert. denied*, 480 U.S. 916 (1987) ("The disposition of the policymaker may be inferred from his conduct **after** the events of that night. Following this incompetent and catastrophic performance, there were no reprimands, no discharges, and no admissions of error. The officers testified at the trial that **no changes had been made in their policies.**") (emphasis added).

Motion *in limine* No. 6 should be denied.

7. **Testimony and Evidence Related to Dr. Washburn is Relevant and Admissible**

Dr. Phillip Washburn was CHC's "Medical Director" prior to Dr. Adusei. Federal courts have been critical of Dr. Washburn. For instance, with respect to the death of Elliott

Williams, the Tenth Circuit found:

> When Nurse Luca ran her pen across the bottoms of Mr. Williams's feet to test his reflexes, there was no response, but there was a little response when Dr. Limbu did the same. Dr. Limbu and Mr. Bell informed Dr. Phillip Washburn, the jail's medical director, that Mr. Williams needed medical attention. Dr. Limbu told Dr. Washburn, "I think we might need to get a CT Scan of the head or something like that just to rule out any medical conditions and [Dr. Washburn] said he would look at him later." Id. at 11890. **Dr. Washburn never followed up** on Dr. Limbu's recommendations.

*Burke v. Regalado,* 935 F.3d 960, 985 (10th Cir. 2019) (emphasis added).

And this Court has held that Dr. Washburn was deliberately indifferent to the serious medical needs of yet another inmate who died at the Jail, Lisa Salgado. As this Court reasoned:

> In his deposition, Dr. Washburn reported that Ms. Salgado had been "up and down," with multiple reports that "she's bad" and was "crashing" or had "crashed," probably two or three times over the course of a day before she died. (Doc. 318-8 at 29 [Dep. p. 222]). **He acknowledged that Ms. Salgado should have been sent to the hospital emergency room "sometime that evening when she crashed again on us." (Id. at 28-29 [Dep. p. 221-222]). Unfortunately, she was not sent to the hospital, and she subsequently died in her cell.**

*Wright v. Glanz,* No. 13-CV-315-JED-JFJ, 2020 WL 1663356, at *4 (N.D. Okla. Apr. 3, 2020) (emphasis added).

There is evidence that CHC knew Dr. Washburn was dangerously incompact, but still kept him in the position of Medical Director, even as inmates died under his care. Dr. Washburn is emblematic of CHC's "continued … failure to provide adequate medical care and fail[ure] to address documented deficiencies, which amounted to a custom…." *Young v. Glanz,* No. 13-CV-315-JED-JFJ, 2020 WL 5937899, at *8 (N.D. Okla. Oct. 6, 2020). Washburn is pertinent part of the CHC regime at the Jail.  Testimony and evidence

regarding Washburn is probative of Plaintiff's municipal liability theory and not unduly prejudicial.

Motion *in limine* No. 7 should be denied.

WHEREFORE, premises considered, Plaintiff respectfully requests that this Court deny the CHC Defendants' Motions *in Limine* (Dkt. #260).

Respectfully submitted,

/s/ Robert M. Blakemore
Robert M. Blakemore, OBA#18656
Smolen & Roytman
701 S. Cincinnati Ave.
Tulsa, OK 74119
(918) 585-2667
(918) 585-2669 Fax
bobblakemore@ssrok.com

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of October 2021, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.

/s/ Robert M. Blakemore